FERREE, Appellant,

v.

SPARKS, Appellee.

[Cite as *Ferree v. Sparks* (1991), 77 Ohio App.3d 185.]

Court of Appeals of Ohio,
Warren County.

No. CA90–08–056.

Decided Sept. 16, 1991.

*Mary Lou Kusel,* for appellant.

*Ruppert, Bronson, Chicarelli & Smith Co., L.P.A.,* and *John D. Smith,* for appellee.

WILLIAM W. YOUNG, Judge.

This appeal involves a post-divorce decree motion filed by plaintiff-appellant, Charlene L. Sparks Ferree, seeking to recover child support allegedly owed to her from defendant-appellee, Gary M. Sparks.

The parties to this appeal were married in 1964. The parties were divorced in 1968 and custody of their minor child, Lisa, was awarded to appellant. Appellee was ordered to pay $17.50 per week to appellant as child support. Appellant remarried on June 1, 1968. Her husband was employed by Kaiser Engineers International. As an employee of Kaiser, he was transferred repeatedly throughout his career. The areas he was transferred to included Venezuela, Jamaica, Cincinnati, Ohio, and Yuma, Arizona.

After the divorce, several motions were filed by appellee regarding child support and visitation rights. Specifically, on February 28, 1969, appellee moved for a change in custody and for the deletion of support. The reason for the motion was that Lisa was outside the United States and beyond the jurisdiction of the court. Appellee further moved for an order relieving him from paying support until Lisa returned to the jurisdiction of the Warren County Court of Common Pleas. Appellee also filed a motion for increased visitation with his daughter.

All of the above motions were heard by the Warren County Court of Common Pleas on September 23, 1970. The court reduced the child support payments to fifteen dollars per week and denied appellee's motion for a change in custody. The court also attempted to fashion a visitation procedure that would be fair to both parties, awarding appellee two months of summer

visitation per year with his daughter. Further, the court ordered that the parties equally share the travel costs of returning Lisa to the United States to visit appellee.

For whatever reason, the visitation procedure was never complied with. Appellee unilaterally stopped paying child support after December 11, 1970. Moreover, no visitation took place between appellee and his daughter for nearly fifteen years.

The testimony indicates that each side tried to show that neither party could locate the other party in order to bring this matter back to court. Thus, no further court action occurred until October 21, 1988, when appellant filed a motion for an order requiring appellee to show cause as to why he should not be held in contempt for failure to pay child support. Appellant's motion also included a request for an award of attorney fees.

A hearing on the matter was held on November 22, 1989 in the Warren County Court of Common Pleas. On March 16, 1990, the trial court rendered a decision finding that appellee had unilaterally stopped paying child support. However, the court also found that appellant had chosen to deprive appellee of a father-daughter relationship and, thus, was not entitled to receive child support for the minor child.

Appellant has filed this timely appeal and assigns as error the following:

Assignment of Error No. 1:

"The trial court erred to the prejudice of the plaintiff/appellant in finding that an alleged denial of visitation is grounds for retroactive termination of the obligation of support by the defendant/appellee."

Assignment of Error No. 2:

"The trial [court] erred to the prejudice of the plaintiff/appellant in holding that the equitable doctrines [of] laches and estoppel are applicable."

Assignment of Error No. 3:

"The trial court failed to rule on appellant's motion for attorney fees and court costs."

The issue that is determinative of this appeal is whether the doctrine of laches constitutes a complete defense to a claim, instituted after eighteen years had elapsed since the last payment, to recover unpaid child support against appellee. We hold that under the circumstances in this case, the doctrine of laches does operate as a bar to appellant's claim.

Laches is an equitable doctrine. The Ohio Supreme Court in *Connin v. Bailey* (1984), 15 Ohio St.3d 34, 35, 15 OBR 134, 134–135, 472 N.E.2d 328, 329, quoting *Smith v. Smith* (1957), 107 Ohio App. 440, 443–444, 8 O.O.2d 424,

426–427, 146 N.E.2d 454, 457, set forth the applicable law as follows: " 'Laches is an omission to assert a right for an unreasonable and unexplained length of time, under circumstances prejudicial to the adverse party. It signifies delay independent of limitations in statutes. It is lodged principally in equity jurisprudence.' " In order to successfully invoke the doctrine, the following requirements must be established:

"Delay in asserting a right does not of itself constitute laches, and in order to successfully invoke the equitable doctrine of laches it must be shown that the person for whose benefit the doctrine will operate has been materially prejudiced by the delay of the person asserting his claim." *Smith v. Smith* (1959), 168 Ohio St. 447, 7 O.O.2d 276, 156 N.E.2d 113, paragraph three of the syllabus. Accord *Kinney v. Mathias* (1984), 10 Ohio St.3d 72, 10 OBR 361, 461 N.E.2d 901.

■ Thus, in order to prevail under the doctrine of laches, the party asserting it must show that (1) there has been an unreasonable delay in asserting the claim, and (2) this delay has caused him material prejudice.

■ Evaluation of the evidence on the question of whether the eighteen-year delay constituted an unreasonable delay is for the trier of fact. A reviewing court will not disturb the findings of the trial court if they are supported by competent, credible evidence. *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578. In the case at bar, the lower court determined that appellant failed to offer an acceptable explanation for why she did not make an effort to recover delinquent support payments from 1970 to 1988.

Unquestionably, there was a delay of eighteen years before appellant asserted her claim against appellee. Appellant offered no acceptable explanation for this delay. There is nothing in the record to suggest that appellee concealed his location so that appellant would not be able to find him. The evidence presented at trial reveals that appellee continued to reside in the southwestern Ohio area at all times subsequent to the divorce. Therefore, appellant could have located his whereabouts by using the Middletown area telephone books or by asking appellee's family or friends. It also appears from the record that appellant did not make a good faith effort to recover the delinquent support payments, even though she could have reasonably located appellee. See *Connin, supra.* Thus, it is obvious to this court that there was competent, credible evidence to support the trial court's decision.

■ An unreasonable delay, however, is only the first step in determining whether the doctrine of laches should be triggered. The next step is to determine whether the delay caused appellee any material prejudice. The

question in this case thus becomes "whether [appellee] has stated facts which will persuade the conscience of the court to grant him relief" from the rights asserted by appellant. *Smith, supra,* 168 Ohio St. at 456, 7 O.O.2d at 281, 156 N.E.2d at 120.

To support his claim of material prejudice, appellee submits that three of his witnesses are now unavailable. The three witnesses presumably would have testified that appellant had acquiesced in appellee's failure to make child support payments, and that it was appellant's intention to seek no support as long as Lisa was kept from her father. Appellee contends that this testimony would have given further support to his argument that appellant was guilty of laches. See *Beiter v. Beiter* (1970), 24 Ohio App.2d 149, 53 O.O.2d 361, 265 N.E.2d 324.

Appellee also claims that he has been materially prejudiced by the delay because he has been denied a relationship with his daughter for over eighteen years. A similar fact pattern arose in *Fiskness v. Partin* (Jan. 19, 1989), Richland App. No. C–2617, unreported, 1989 WL 17282. In *Fiskness,* the parties obtained a divorce in 1979. Thereafter, the mother and her daughter moved out of the state of Ohio. The father's attempts to determine the whereabouts of his ex-wife and daughter were unsuccessful. Finally, in 1987, the father managed to regain contact with his daughter. During the six and one-half years that the father did not see his daughter, it was undisputed that he did not pay child support. After the father resumed visitation with his daughter, the mother petitioned the court for child support arrearages for the period when the father was not in contact with his daughter. The court of appeals, upholding the decision of the trial court which found that the mother was guilty of laches, stated that:

"[The mother] knew [of the father's] whereabouts, but never in the six and one-half year period in question attempted to enforce the child support provisions of the dissolution decree. In fact, the [trial] court found that contact between [the father] and his daughter was effectively precluded by [the mother] who, with the aid of her relatives, was able to conceal her whereabouts from [the father]. Thus, it appears from the facts that [the mother] acquiesced to [the father's] failure to pay. * * *

"Furthermore, [the mother's] delay in asserting her right to child support did materially prejudice [the father] who was denied his right of visitation for the time period in question, was unable to participate in raising his daughter, and is now unable to recapture the visitation he was denied." *Id.* at 4–5.

Here, appellee was also denied the opportunity to participate in rearing his daughter. Appellant's deliberate withholding of Lisa from her father deprived appellee his right to visitation. We are, therefore, convinced that

appellee proffered sufficient circumstances to justify invoking the doctrine of laches.

We understand that our decision may appear to conflict with the law in Ohio that one who has been denied visitation rights should obtain an appropriate remedy through the proper legal channels rather than requite the denial by refusing to make support payments. *Flynn v. Flynn* (1984), 15 Ohio App.3d 34, 37, 15 OBR 57, 59–60, 472 N.E.2d 388, 391–392. However, we find under the circumstances of this case that our decision in *Flynn* is neither appropriate nor controlling.

First, we are convinced that appellee had a legitimate interest in having a relationship with his daughter. Appellant, for whatever reason, chose to deprive him of that relationship. The evidence at trial clearly established that appellant could have reasonably located appellee, but failed for nearly eighteen years to do so. Second, it appears that appellee tried several times to locate his daughter's whereabouts. His unsuccessful attempts at finding his daughter were due in large part to appellant's use of family members to hide Lisa from her father. Appellee testified that he contacted appellant's parents, but they refused to divulge any information about Lisa. Appellant's attorney also refused to reveal to appellee where Lisa was located. Additionally, there is evidence in the record which indicates that appellant told Lisa several unsubstantiated stories about her father. These stories included appellee holding a gun to appellant's head and sexual misconduct on the part of appellee.

Moreover, the record indicates that the sole reason appellant attempted to collect the child support arrearage was because appellee had established contact with his daughter. The trial court itself determined that if it were not for Lisa's decision to reestablish a relationship with her father, appellant would not have brought the instant action. Also, there is some evidence that appellant acquiesced in appellee's failure to make child support payments.

Finally, the record is devoid of any evidence indicating that appellant or Lisa suffered financial hardship or difficulty during the eighteen years at issue. It appears from the evidence presented that appellant's second husband, William Ferree, treated Lisa as if she were his own daughter. Appellant and Ferree had even discussed the possibility of Ferree adopting Lisa. Thus, it appears that appellant's claim for unpaid child support is of a personal nature rather than for the support or "best interest" of Lisa. See *Crow v. Crow* (Apr. 16, 1990), Butler App. No. 89–06–087, unreported, 1990 WL 44218.

In summary, we hold that there is competent, credible evidence to support the trial court's decision finding that appellee was materially prejudiced by

appellant's unreasonable delay in asserting her claim for delinquent child support. Thus, the doctrine of laches was appropriate in the instant action.

Accordingly, appellant's first and second assignments of error are overruled.

 Appellant asserts in her third assignment of error that she should have been awarded attorney fees and court costs. It is within the discretion of the trial court to award attorney fees incurred in post-decree proceedings relative to the support of minor children of the marriage. *Blum v. Blum* (1967), 9 Ohio St.2d 92, 38 O.O.2d 224, 223 N.E.2d 819, syllabus. Moreover, "[a] trial court does not abuse its discretion in awarding reasonable attorney fees to a divorced spouse in a successful appeal to enforce a former spouse's legal obligations." *Evans v. Brown* (1986), 34 Ohio App.3d 56, 31 OBR 607, 516 N.E.2d 1289, paragraph two of the syllabus.

As appellant's attempt to enforce appellee's support obligation was found to be barred by the doctrine of laches below, the trial judge correctly refused to award appellant attorney fees and court costs. Given the above disposition of appellant's first two assignments of error, there is still no basis for an award of costs or attorney fees. Therefore, appellant's third assignment of error is overruled.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

KOEHLER, J., concurs.

JONES, P.J., dissents.

JONES, Presiding Judge, dissenting.

I must dissent. My colleagues in the majority are so intent upon punishing the appellant-mother for denying the appellee-father the opportunity to visit with his daughter while she was growing up that they have judicially changed a fundamental concept of law regarding child support. Failure to support children has become a problem of gigantic proportions to every state in the union and the taxpayers thereof. Although certainly not intended, the majority opinion will exacerbate the problem, usually the mother's but frequently the taxpayers'. More importantly, the majority has diminished the power of the trial courts to assist in the solution.

The trial court found that appellee unilaterally stopped paying child support in December 1970. At that time, the court had already fashioned a visitation procedure designed to accommodate both parties. It is entirely possible that the father of the child was justifiably aggrieved when he was ordered to pay

support for a child he could see only upon occasions. It is also entirely possible that any appeal then filed by the father would have been denied, and the appellate court would have simply held that the trial judge did not abuse his discretion. However, instead of appealing the order of the trial court, or filing an appropriate motion after a reasonable lapse of time, appellee unilaterally decided to ignore the order of the court. In our system of justice, appellee's conduct cannot be countenanced. While the doctrine of laches has great relevance with respect to actions between individual litigants upon myriad occasions, it has no applicability to an order of a court having jurisdiction of the parties and the subject matter. Our holding in this case will open Pandora's box and permit any aggrieved litigant to ignore the order of a trial court.

Who is to say that the father of this child would not have been able to know his child during her formative years, thereby participating in her rearing, had he obeyed the order of the court and continued to pay support? He knew her whereabouts for at least two years after the court order, via the bureau of support, which had her address. Had he not, of his own volition, stopped making support payments on or about December 11, 1970, he would presumably have had his daughter with him for visitation in the summer of 1971. Had the child's mother failed to comply with the visitation order, she would have been in contempt, and the father could have obtained redress through the court. It is totally without logic to hold that the father was not in contempt when he unilaterally ignored the court order. The doctrine of laches has no application in such circumstances.

My dissent should not be construed as granting my imprimatur to one parent withholding visitation by the other parent on grounds of failure to support. Such is equally true when the denial of visitation occurs either prior or subsequent in time to the failure to support. The parent who is aggrieved, whether by violation of a support order or an order pertaining to visitation, must pursue any possible remedy through the courts. The decision of the majority rewards appellee for his contempt of court.