SEEGERT et al., Appellees and Cross–Appellants,

v.

ZIETLOW, Appellant and Cross–Appellee.

[Cite as *Seegert v. Zietlow* (1994), 95 Ohio App.3d 451.]

Court of Appeals of Ohio,
Cuyahoga County.

Nos. 65813, 65814.

Decided Aug. 15, 1994.

452

*Stephanie Tubbs Jones,* Cuyahoga County Prosecuting Attorney, and *Lynn A. Yohe,* Assistant Prosecuting Attorney, for appellees and cross-appellants.

*Kojo O. Agyeman* and *George E. Hamm, Jr.,* for appellant and cross-appellee.

DONALD C. NUGENT, Judge:

This is an appeal and cross-appeal from a final judgment of the Cuyahoga County Court of Common Pleas which awarded plaintiff-appellee/cross-appellant Lisa Seegert $19,800 in past child support and current support of $325 per month plus two percent poundage. Additionally, the trial court's judgment ordered

defendant-appellant/cross-appellee David Zietlow to pay appellee $439.72 for maternity expenses and $265.28 for court costs.

Appellant timely appeals, raising the following assignments of error for our review:

"I.  The trial court erred to the prejudice of appellant in awarding back child support because that award is barred by laches, estoppel or waiver.

"II.  The trial court abused its discretion and committed prejudicial error when it ruled that in a paternity action, child support obligations of the putative father begin with the date of birth of the child and not when paternity is established, and also when it computed past support by using the parent's gross income and the worksheet.

"III.  The trial court abused its discretion and committed reversible error by making a support award that is excessive, beyond the parent's ability to pay, and fails to comply with the literal requirements of the statute."

In addition, appellees/cross-appellants raise the following assignments of error:

"I.  The trial court erred in calculating the defendant's 1993 income at $34,883.00 rather than the appropriate figure of $37,788.00.

"II.  The trial court abused its discretion by deviating from the guidelines and reducing the defendant-appellant's annual child support obligation for every year of the child's life when determining the defendant-appellant's past and current child support obligation."

## I

As an initial matter, this court must address the propriety of the App.R. 9(C) statement of the evidence submitted by appellant and approved and signed with modifications by the juvenile court.  A trial court should approve an App.R. 9(C) statement of the evidence only if no report of the evidence or proceedings at a hearing or trial was made or if a transcript of the proceedings is unavailable. See *State ex rel. Johnson v. Hunter* (1992), 64 Ohio St.3d 243, 244, 594 N.E.2d 614, 615; and *Rescina v. Kaperak* (Nov. 25, 1992), Cuyahoga App. No. 61465, unreported, 1992 WL 357302.  Moreover, an App.R. 9(C) statement of the evidence is not a substitute for timely and proper objections to a referee's report. See *Chaney v. East* (May 5, 1994), Cuyahoga App. No. 65401, unreported, 1994 WL 173498.  In the present case, a referee's report was prepared and filed with the trial court.  Following timely objections from both parties, the trial court approved the referee's report and recommendations.  Because a report of the evidence was prepared by the referee, the App.R. 9(C) statement of the evidence is not properly before this court as part of the record.  Therefore, this court of

appeals must presume regularity of the juvenile court's judgment based on the referee's report and recommendations and any referenced evidentiary materials found within the lower court's record. *Chaney, supra,* at 8; *Sasarak v. Sasarak* (1990), 66 Ohio App.3d 744, 749, 586 N.E.2d 172, 175, fn. 4.

The following pertinent facts appear in the record, the pleadings and the referee's report and recommendations:

Appellees Lisa and Melissa Seegert filed the instant paternity complaint on December 10, 1991 seeking to establish the appellant, David Zietlow, as the father of Melissa, a minor born on August 8, 1985. Lisa Seegert is the mother of Melissa. Following a genetic test, paternity was established on July 28, 1992 and approved on August 12, 1992. Appellant was ordered to pay temporary child support of $60 per week. Payment began on January 1, 1993. Thereafter, the matter was set for a hearing on maternity expenses and past and current child support.

The testimony and evidence presented to the referee is reflected as follows in the referee's report:

"Both parents were sworn in and testified to relevant facts as summarized below:

"Plaintiff is an unmarried twenty-nine (29) year old woman residing with her parents and her child at 3200 George Avenue, Parma, Ohio. Plaintiff is employed currently as a legal secretary and has been since 1985. The child, Melissa, is now seven (7) years of age and attending public school and is in good health. Plaintiff has no other children. Plaintiff currently pays $80.00 per month to her mother regarding work related child care and has done so since February 1990. (Plaintiff's exhibits 10 and 11) Prior to that, Plaintiff paid work related child care in the amounts listed on cancelled checks dated November 14, 1985 through January 16, 1990. (Plaintiff's exhibit 12) Plaintiff in addition, submitted copies of her federal tax returns from 1985 through 1991 (Plaintiff's exhibits 1 through 7) and copies of three (3) wage and earnings statements for 1992 (Plaintiff's exhibit 8). Furthermore Plaintiff submitted copies of current pay stub [*sic*] from her present employer (Plaintiff's exhibit 9).

"Plaintiff testified that she notified Defendant in person when she was pregnant with his child. Plaintiff testified she had received no contributions for care and support of the child from Defendant prior to the present Court order. Plaintiff filed a paternity action in this County April 3, 1986. (No. 8670508) On October 4, 1991, the action was voluntarily dismissed since court found that service of summons was not perfected on Defendant within one year of filing action.

"Plaintiff also testified that she paid $439.72 in maternity expenses not covered by medical and health insurance. (Plaintiff's exhibit 14).

"For the plaintiff's case, Assistant County Prosecutor called the Defendant, as a hostile witness, and upon cross-examination established that Defendant was employed between 1985 to the present.

"Defendant acknowledged copies of his federal tax returns with W–2 wage and earnings statements from 1985 through 1992 (Plaintiff's exhibits 15 through 22).

"The defendant is a thirty-one (31) year old married man, residing at 3675 Sleepy Hollow, Brunswick, Ohio. The Defendant is currently employed at LTV Steel Company as a laborer. Defendant has a high school degree and associates degree in electronics. Other than his current employment, Defendant has no other sources of income. Defendant was married in September 1988 and his wife is currently pregnant with their first child due in July 1993. Defendant has no other children. Defendant has supported his wife since marriage and expected to continue to do so in the future.

"Defendant testified he had no knowledge that Plaintiff's child could be his until he received summons in July 1991 in the present action. Defendant submitted expense statements from 1985 through 1992 with exhibits (Defendant's exhibits D through K). In addition, [defendant] submitted a copy of letter from Plaintiff's employer dated February 1, 1993 designating the difference in cost between single and family medical and health insurance premiums. (Defendant's exhibit A). The Defendant submitted a projected expense statement for 1993. (Defendant's exhibit C).

"During the course of the Plaintiff's case, Plaintiff's exhibit 14 was submitted for evidence, but Defendant objected. These were copies of statements from insurance carrier regarding Plaintiff's maternity expenses. Later in the hearing, Defense counsel stipulated that Plaintiff's maternity expenses not covered by existing insurance were $439.72. Therefore the admission of exhibit 14 for the Plaintiff is moot. Furthermore, during the hearing Defense counsel objected as hearsay, to Plaintiff's exhibit 10, an affidavit signed by Plaintiff's mother, purporting to verify current work-related child care expenses. Defendant's objection is sustained and exhibit 10 is stricken from the record."

Following the recital of the evidence and testimony presented, the referee, in his report, rendered conclusions of law and findings of fact for the years 1985 through 1993, inclusive. The referee concluded that sufficient evidence had been submitted to rebut the correct amount of child support under the child support worksheet and guidelines and that $3,900 per year, or $325 per month, was a just and appropriate amount for current child support. The referee further found that the parties stipulated that appellee's out-of-pocket maternity expenses were

$439.72. Finally, the referee, while characterizing both parties as being somewhat dilatory in asserting their rights, found that the past child support award should be $19,800 as appellant's financial obligation to Melissa. The juvenile court subsequently approved the referee's recommendations and confirmed the report as an order of the court.

## II

We shall consider appellant's assignments of error first.

## A

In appellant's first assignment of error, appellant contends that the doctrine of laches, estoppel or waiver barred the trial court from awarding back child support in the present case. Appellant argues that he is materially prejudiced by an excessive award and that he has lost all rights of visitation, custody and participation in the direction of Melissa's growth and development during her formative years.

Laches is an equitable defense to a paternity action. *Wright v. Oliver* (1988), 35 Ohio St.3d 10, 517 N.E.2d 883, syllabus; *Ferree v. Sparks* (1991), 77 Ohio App.3d 185, 601 N.E.2d 568. In order to successfully invoke the equitable doctrine of laches, it must be shown that the person for whose benefit the doctrine will operate has been *materially* prejudiced by an unreasonable and unexplained delay of the person asserting his claim. *Wright, supra; Connin v. Bailey* (1984), 15 Ohio St.3d 34, 15 OBR 134, 472 N.E.2d 328; and *Smith v. Smith* (1959), 168 Ohio St. 447, 7 O.O.2d 276, 156 N.E.2d 113, paragraph three of the syllabus.

While appellant focuses most of his attention on whether he has been materially prejudiced by appellee's delay in instituting the present parentage action, it is not readily apparent to this court that appellee's conduct amounts to unreasonable and unnecessary delay. The record before this court indicates that appellee testified she notified appellant in person when she was pregnant with appellant's child. Appellee gave birth to Melissa on August 8, 1985. Thereafter, appellee instituted a parentage action on April 3, 1986. It was not until October 4, 1991 that the action was voluntarily dismissed, since service of summons had not been perfected on appellant within one year of filing the action. Only two months later, on December 10, 1991, appellee refiled the instant paternity action. While the referee found that both parties were somewhat dilatory in exercising their legal rights, a review of the record leads this court to conclude that appellee's dilatory conduct did not amount to unexplained or unreasonable delay.

■ Additionally, the record supports the referee's findings that appellant was not materially prejudiced by appellee's dilatory conduct.

Appellant first argues he has been materially prejudiced by an excessive award. However, the mere inconvenience of having to meet an existing obligation imposed by an order or judgment of court at a time later than specified in the order or judgment cannot be called material prejudice. *Connin, supra,* 15 Ohio St.3d at 37, 15 OBR at 136, 472 N.E.2d at 330. Additionally, generic assertions of hardship are insufficient to rise to the level of material prejudice. *Id.* Likewise, in the present case, appellant's generic assertions of hardship are insufficient to rise to the level of material prejudice.

Appellant also argues that he has been materially prejudiced since he has lost all past rights of visitation, custody and participation in the direction of Melissa's growth and development during her formative years. Citing *Park v. Ambrose* (1993), 85 Ohio App.3d 179, 185, 619 N.E.2d 469, 473, appellant points out that there is no such thing as "past visitation" or "past custody" arrearages. See, also, *Ferree v. Sparks, supra.* However, we believe *Park* is distinguishable in that the paternity action therein was brought after the parties' child had reached the age of majority. Additionally, during the child's minority, the plaintiff therein never attempted to establish parentage or seek child support from the defendant.

In the present case, Melissa is now nine years old and has many formative years remaining. Additionally, the record reveals that appellee did attempt to establish paternity through the filing of her parentage complaint prior to Melissa's first birthday. Although the complaint was voluntarily dismissed some five years later for failure to perfect service of process, appellee refiled the instant parentage complaint approximately two months after the dismissal.

Most important, the referee's report indicated that appellant was "somewhat dilatory" in exercising his legal rights. In this vein, appellant himself could have just as easily filed a parentage action in order to enforce his rights to visitation and/or custody. Cf. *Ferree v. Sparks, supra,* 77 Ohio App.3d at 190–191, 601 N.E.2d at 571–572, wherein the appellate court found competent, credible evidence supporting the trial court's conclusion that defendant had proved a laches defense where evidence showed that defendant had a legitimate interest in having a relationship with his daughter, that defendant had tried several times to determine his daughter's whereabouts, and that the sole reason plaintiff had attempted to collect child support arrearages was that defendant had established contact with his daughter.

Therefore, based on the limited record before this court, we conclude the juvenile court properly approved the referee's finding that the defense of laches did not bar appellee's claim for back child support.

Finally, we note that appellant fails to raise any argument or point to any evidence in the record to support the defense of estoppel or waiver. See *Harding v. Harding* (Mar. 17, 1994), Cuyahoga App. No. 64851, unreported, 1994 WL 86221.

Appellant's first assignment of error is overruled.

### B

■ In appellant's second assignment of error, appellant argues that the trial court committed prejudicial error when it ruled "as a matter of law, the period during which the duty of support is owed, * * * in a paternity action, commences with the date of birth of the child, or in this case 8/8/85." Additionally, appellant argues that the trial court committed error by calculating the amount of past child support owed by utilizing a current worksheet for all previous years. Appellant argues that past child support can be properly awarded only upon proof of actual expenses incurred for the support of the child.

R.C. 3111.13 provides, in pertinent part[1]:

"(A) The judgment or order of the court determining the existence or nonexistence of the parent and child relationship is determinative for all purposes.

" * * *

"(C) The judgment or order may contain any other provision directed against the appropriate party to the proceedings, concerning *the duty of support,* the furnishing of bond or other security for the payment of the *judgment, or any other matter in the best interest of the child. The judgment or order shall direct the father to pay all or any part of the reasonable expenses of the mother's pregnancy and confinement.  * * * "* (Emphasis added.)

Additionally, R.C. 3111.15(A) provides:

"If the existence of the father and child relationship is declared or *if paternity or a duty of support has been adjudicated under section 3111.01 to 3111.19 of the Revised Code* or under prior law, the obligation of *the father may be enforced in*

---

1.  S.B. No. 10, effective July 15, 1992, amended R.C. 3111.13 and added subsection (F)(3), which now provides:

"When a court determines whether to require a parent to pay an amount for that parent's failure to support a child prior to the date the court issues an order requiring that parent to pay an amount for the current support of that child, it shall consider all relevant factors, including, but not limited to, any monetary contribution either parent of the child made to the support of the child prior to the court issuing the order requiring the parent to pay an amount for the current support of the child."

 We believe this subsection of R.C. 3111.13 codifies case law holding that a juvenile court may issue an award of back child support in a parentage action.

*the same or other proceedings by the mother, the child, or the public authority that has furnished or may furnish the reasonable expenses of pregnancy, confinement, education, support, or funeral, or by any other person, including a private agency, to the extent that any of them may furnish, has furnished, or is furnishing these expenses."* (Emphasis added.)

Pursuant to the foregoing, a judgment determining the existence of the parent-child relationship is determinative for all purposes. R.C. 3111.13(A). Additionally, the judgment may contain any provision concerning the duty of support or any other matter in the best interest of the child. R.C. 3111.13(C). Moreover, the above statutes clearly contemplated an award for past expenses. The judgment *shall* direct the father to pay any or all reasonable expenses of the mother's pregnancy and confinement. R.C. 3111.13(C). Finally, a support order may be enforced in the same action that established paternity or in another proceeding, by the mother, the child, or the public authority or any other person or agency that *has furnished* the reasonable expenses of pregnancy, confinement, education, support or funeral. R.C. 3111.15(A).

We also believe it is worth noting that a parentage action may be brought up to five years after a child reaches the age of majority. R.C. 3111.05. Because the parents' duty to support their children generally extends to the child's eighteenth birthday, see R.C. 3103.03, it would be illogical to extend the statute of limitations beyond the child's majority if the legislature contemplated that only current support be awarded in a paternity action. After a child has reached the age of majority, the putative parent would generally no longer have any duty to support that child. Thus, by extending the statute of limitations beyond the age of majority, when the parent no longer has any duty of support, it appears the legislature envisioned that back child support would be awarded in a parentage action.

This court is mindful that remedial statutes, *i.e.*, those that prescribe methods of enforcement of rights or of obtaining redress, are to be construed liberally. R.C. 1.11; *State ex rel. Holdridge v. Indus. Comm.* (1967), 11 Ohio St.2d 175, 40 O.O.2d 162, 228 N.E.2d 621; *Carter v. Krise* (1859), 9 Ohio St. 402 (construing statutory bastardy proceedings not as creating a duty but as providing a remedy to enforce a common-law duty). The purpose of the paternity statute is to compel the father of an illegitimate child to bear the expenses of childbirth and child support so that the mother will not be solely responsible for that support and so that the child will not be a financial burden on the state. See *Johnson v. Norman* (1981), 66 Ohio St.2d 186, 20 O.O.3d 196, 421 N.E.2d 124, paragraph one of the syllabus. Moreover, case law from the appellate courts of this state has interpreted R.C. 3111.15 and its predecessor, former R.C. 3111.17, as requiring child support from the date of the delivery of the child up to the date

of the paternity adjudication and until the age of majority. See *Lewis v. Chapin* (1994), 93 Ohio App.3d 695, 639 N.E.2d 848; *Dunson v. Aldrich* (1988), 54 Ohio App.3d 137, 561 N.E.2d 972; *Edwards v. Sadusky* (1982), 4 Ohio App.3d 297, 4 OBR 548, 448 N.E.2d 506; *Baugh v. Carver* (1981), 3 Ohio App.3d 139, 3 OBR 157, 444 N.E.2d 58; and *Weaver v. Chandler* (1972), 31 Ohio App.2d 243, 60 O.O.2d 405, 287 N.E.2d 917. A juvenile court, however, must exercise its discretion in awarding support, and the statute is not intended to give the mother a windfall award for having an illegitimate child. *Edwards, supra.*

Finally, we note that a *per se* rule prohibiting back child support in a paternity proceeding, thereby denying illegitimate children and their custodial parents support prior to a paternity adjudication while allowing back child support in other proceedings such as an action for necessities, would appear to violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and Section 2, Article I of the Ohio Constitution. See, *e.g., Franklin v. Julian* (1972), 30 Ohio St.2d 228, 59 O.O.2d 264, 283 N.E.2d 813 (wherein the Ohio Supreme Court held that dissimilar treatment of legitimate and illegitimate children in common-law actions for support and maintenance would be a denial of equal protection); and *McQueen v. Hawkins* (1989), 63 Ohio App.3d 243, 578 N.E.2d 539.

Despite the foregoing, appellant argues that pursuant to *In re Adoption of Sunderhaus* (1992), 63 Ohio St.3d 127, 585 N.E.2d 418, an unmarried parent's support obligation commences on the date paternity is judicially established. We agree with the referee and juvenile court and believe that *Sunderhaus* was an adoption proceeding in which a stepfather attempted to adopt a minor child. Prior to the filing of the adoption petition, the putative father filed a parentage action, and the parent-child relationship was thereafter established. In the adoption action, the stepfather argued the natural father's consent was not required pursuant to R.C. 3107.07(A), since the natural father had failed to provide support as required for the one-year period prior to filing the adoption petition. The probate court found that consent was not necessary. The court of appeals reversed. The Ohio Supreme Court affirmed the court of appeals, holding that the one-year period of nonsupport prescribed by R.C. 3107.07(A), which obviates the requirement of parental consent to an adoption pursuant to R.C. 3107.06, commences at the date that parentage has been judicially established. *Id.*, paragraph two of the syllabus.

In *Sunderhaus,* the Ohio Supreme Court expressed its concern that the natural parent's rights were subject to forfeiture or abandonment in the adoption proceeding. *Id.*, 63 Ohio St.3d at 131–132, 585 N.E.2d at 420–422. Consequently, the court was obligated to strictly construe R.C. 3107.07(A) in order to protect the nonconsenting parent's rights. Moreover, underlying the *Sunderhaus* deci-

sion is the prospect that the nonconsenting parent's rights could be lost before ever being established or even before the nonconsenting parent knew of them. Thus, an unmarried parent is subject to the support obligation of R.C. 3107.07(A) only where a paternity determination has been rendered pursuant to R.C. 3111.08(B) or 3111.12. *Sunderhaus* should not be read to obviate the parents' natural duty to support their children.

Therefore, we conclude the juvenile court has jurisdiction in a parentage action to award retroactive or back child support for the period of time prior to the date upon which the parent-child relationship is judicially established.

■ Appellant further contends that in a paternity action, a past support award is limited to the expenses proved to have been actually incurred for the support of the child. Consequently, appellant contends the trial court's computation of past support by use of a current worksheet for all previous years, as though it were current support, constitutes reversible error.

The referee found, and the juvenile court approved and ordered, "[t]hat the guidelines [contained in R.C. 3113.215(B) and 3111.13(E) ] may be used to determine the father's financial duty of support to the child, regarding past child support, but only as to the applicable law or rule in effect at that period of time and with the use of broad discretion as to relevant factors necessary to determine a reasonable amount of support for that period of time." The referee then considered each year separately, from 1985 to 1993, and entered a separate finding with respect to back child support owed for each year. Guideline worksheets, as found in R.C. 3115.215(E), were prepared for 1987 through 1993 and were incorporated by reference into the referee's report. Moreover, these worksheets are a part of the record on appeal.

In his report, the referee explicitly computed back child support owed by reference to the law applicable to each year. Thus, for the years 1990 through 1993, the referee considered and applied the statutory guidelines as found in R.C. 3113.215(B)(3) and 3111.13(E). For the years 1987 through 1989, the referee considered and applied C.P.Sup.R. 75, in effect at the time, for addressing circumstances for deviation from the guidelines. Finally, for the years 1985 through 1986, the referee applied the guidelines for consistency and as a starting point to calculate an appropriate and just amount of back child support owed.

The present case is readily distinguishable from *Dunson v. Aldrich, supra,* upon which appellant relies. In *Dunson,* the Franklin County Court of Appeals held as follows:

" 'In the absence of a specific finding that the equitable amount that defendant should pay toward the support of the child has not varied since the birth of the child, it is inappropriate to utilize the current finding as to appropriate child

support and arbitrarily determine the amount due for support since the birth of the child by multiplying the number of weeks involved by the current child support amount * * *.' " *Id.,* 54 Ohio App.3d at 143, 561 N.E.2d at 978.

In the present case, the referee explicitly found that the equitable amount appellant should pay toward child support has changed since birth. In fact, the referee recommended different amounts of back child support for each year from August 8, 1985 to January 1, 1993. As distinguished from *Dunson,* the referee did not utilize the current figure of appropriate child support and multiply that figure by the amount of weeks since Melissa's birth. Because the parties' financial situations have changed dramatically since Melissa's birth, the juvenile court did not abuse its discretion in calculating back child support owed for each year of Melissa's life by use of the worksheets with reference to the applicable law for each given year.

Finally, we acknowledge that past child support is an asset owned by the custodial parent. See *Miller v. Miller* (1991), 73 Ohio App.3d 721, 725, 598 N.E.2d 167, 170; and *Nelson v. Nelson* (1990), 65 Ohio App.3d 800, 804, 585 N.E.2d 502, 504. Additionally, we recognize that "[i]n the absence of evidence to the contrary, the court will presume that the child was clothed, fed and generally accorded the necessities of life, the payment for which the weekly support money was intended." *Connin v. Bailey, supra,* 15 Ohio St.3d at 37, 15 OBR at 136, 472 N.E.2d at 330, cited with approval in *Miller, supra.*

However, in light of the foregoing, it does not necessarily follow that back child support is limited to those expenses proved to have been actually incurred as appellant contends. To the contrary, *Connin* presumes that child support was provided by the custodial parent. While we acknowledge that a child may not have been supported by the custodial parent to the extent that the child would have been supported had the noncustodial parent been contributing to the support of the child all along, we do not believe this relieves the noncustodial parent of his duty to support that child from the date of birth to majority.

Therefore, we believe the juvenile court did not abuse its discretion by utilizing the child support worksheet and the applicable law in effect for each year of the child's life in computing back child support owed to appellee.

Appellant's second assignment of error, is, therefore, overruled.

### C

In appellant's final assignment of error, appellant argues the trial court committed reversible error in awarding current child support that is excessive and beyond his ability to pay and fails to comply with the literal requirements of R.C. 3113.215(B)(3) and 3111.13(E).

In *Marker v. Grimm* (1992), 65 Ohio St.3d 139, 601 N.E.2d 496, the Ohio Supreme Court held that the terms of R.C. 3113.215 are mandatory in nature and must be followed literally and technically in all material respects. *Id.,* paragraph two of the syllabus. Additionally, any court-ordered deviation from the applicable worksheet and the basic child support schedule must be entered by the court in its journal and must include findings of fact to support it. *Id.* at paragraph three of the syllabus.

In the present case, the referee noted that pursuant to the statutory guidelines, the "rebuttably presumed" correct amount of current child support is $4,542 for 1993. However, after consideration of R.C. 3113.215(B)(3) and 3113.13(E), the referee found the appropriate and just amount of current child support would be $3,900 for 1993, or $325 per month. Thus, the deviation of which appellant complains is a downward deviation in his favor.

Since the statutory guidelines are "rebuttably presumed" correct, R.C. 3113.215(B)(1), it follows that *appellant* bears the burden of demonstrating that the guidelines should not be followed. Pursuant to R.C. 3113.215(B)(1)(a) and (b), the guidelines must be followed unless the court determines that the amount calculated would be unjust or inappropriate and would not be in the best interest of the child and the court files findings of fact supporting that determination. *Marker, supra,* 65 Ohio St.3d at 141, 601 N.E.2d at 497.

Additionally, the record properly contains the child support computation worksheet for all relevant years including 1993, and the court-ordered deviation therefrom is partially supported by the referee's findings of fact which were approved by the juvenile court.[2] The referee found that "[a]lthough defendant did not present specific evidence as to what benefits plaintiff receives by living with her parents, it was however established that plaintiff's payments for living expenses to her parents were commingled with work-related child care. It is quite clear to this referee that the plaintiff's expenses would not come close to defendant's established obligation for a mortgage and real estate taxes. Defendant also has additional obligations to support his pregnant spouse."

Appellant argues he submitted his pay stubs, an affidavit, receipts, bills and cancelled checks and a schedule of his income for 1993, as well as testimony regarding his income and financial obligations which generally show his 1993 gross income to be $34,883 and various "pre-established expenses" in the amount of $19,932.44. This then leaves $14,950.56 after deduction of appellant's "pre-

---

2. At this junction, however, we find it necessary to note that while the referee explicitly considered what was just and appropriate, the referee failed to support his award with findings and conclusions that the downward deviation was in the best interest of the child. See Part III B, *infra*.

established expenses." Unexplainedly, appellant then calculates his disposable income for 1993 to be $4,856.80, which he claims does not consider support of a child his current wife is expecting in July 1993 or maternity expenses.

Appellant's "1993 expense projection" sheet, however, calculates appellant's mortgage and real estate taxes to be $4,440. Thus, approximately $10,-5110.56 remains for the year 1993. Additionally, we note that in determining the amount of child support owed, the obligor's disposable income or disposable earnings are *not* a consideration. See *Dunson v. Aldrich, supra,* 54 Ohio App.3d at 144, 561 N.E.2d at 979.

Nonetheless, by appellant's own calculations, his disposable income exceeds the amount of current child support for the year 1993. Additionally, this court recognizes that a parent's natural duty to support his children is paramount to various "pre-established expenses," including, but not limited to, appellant's $672 phone bill, $2,400 in expenses for "food/health/beauty aids," $685 for home maintenance, and $5,474 for car and truck payments, including repairs and fuel where only one member of appellant's household is employed, etc.

In sum, we hold that appellant has failed to demonstrate, on the face of the record before us, an abuse of discretion by the juvenile court in awarding $3,900 in current child support for the year of 1993.

Appellant also argues in his final assignment of error that the juvenile court committed reversible error when it set a support order which exceeds the statutory maximum garnishment amount. R.C. 3113.21(D)(1)(a) allows a court to garnish a portion of appellant's wages for satisfaction of his child support obligations. R.C. 3113.21(D)(1)(a) provides, in pertinent part:

" * * * However, in no case shall the sum of the amount specified in the order to be withheld and any fee withheld by the employer as a charge for its services exceed the maximum amount permitted under Section 303(b) of the Consumers Credit Protection Act, 15 U.S.C. 1673(b)."

Section 303(b) of the Consumers Credit Protection Act provides as follows:

"(2) The maximum part of the aggregate disposable earnings of an individual for any workweek which is subject to garnishment to enforce any order for the support of any person shall not exceed

"(A) where such individual is supporting his spouse or dependant child (other than a spouse or child with respect to whose support such order is used), 50 per centum of such individual's disposable earnings for that week * * *." See, also, *Roach v. Roach* (1989), 61 Ohio App.3d 315, 572 N.E.2d 772; *Hockenberry v. Hockenberry* (1992), 75 Ohio App.3d 806, 600 N.E.2d 839.

Again, unexplainedly, appellant contends his disposable income is $4,856.80. Appellant, however, grossly underestimates his "aggregate disposable earnings." Section 1672(b), Title 15, U.S.Code, states that "disposable earnings means that part of the earnings of any individual remaining *after the deduction from those earnings of any amount required by law to be withheld.*" (Emphasis added.) Thus, appellant's aggregate disposable earnings, after deduction of relevant taxes and union dues, is, by our calculations, $26,702.68. Thus, the garnishment order is under fifteen percent of appellant's aggregate disposable earnings.

Appellant's third assignment of error is, accordingly, overruled.

## III

The assignments of error of appellees/cross-appellants will now be considered.

## A

In appellees' first assignment of error, appellees argue that the juvenile court erred in calculating appellant's 1993 income at $34,883 rather than the appropriate figure of $37,788. Appellees argue appellant is paid on a biweekly basis rather than on a semimonthly basis as calculated by the referee. The referee's report recommends a biweekly garnishment order; however, the report does not otherwise indicate whether appellant is paid on a biweekly or semimonthly basis. Instead, the report merely finds that appellant's income for 1993 is expected to be $34,883. Despite this inconsistency, we must presume regularity in the lower court's judgment based on the factual findings of the referee. *Chaney v. East* (May 5, 1994), Cuyahoga App. No. 65401, unreported, at 8, 1994 WL 173498. Accordingly, appellees' first assignment of error is overruled.

## B

Appellees argue in their final assignment of error that the juvenile court abused its discretion in deviating from the child support guidelines and reducing appellant's annual child support obligation when calculating appellant's past and current child support obligation. Appellees are partially correct in pointing out that the juvenile court's award of past child support, computed to be $19,800, is incorrect. By our calculations, based on the referee's findings for each year, appellant owes $20,100 as past child support. This figure is based on the referee's findings that appellant owed $4,800 for 1992, $3,900 for 1991, $4,300 for 1990, $3,300 for 1989,[3] $2,200 for 1988, $800 for 1987, and $800 for 1985 and 1986.

Appellees are further correct in pointing out that the referee's findings of fact and conclusions of law, which deviate downward from the presumably

---

3. In calculating the back support owed by appellant as $20,130, appellees mistakenly add $3,330 for 1989.

correct amount of child support owed pursuant to the guidelines, fail to explicitly find that the deviation is in the best interest of the child. R.C. 3113.215(B)(3) states that a court "may deviate from the amount of support that otherwise would result from the use of the schedule and the applicable worksheet * * * in cases in which the application of the schedule and the applicable worksheet * * * would be unjust or inappropriate *and would not be in the best interest of the child.*" (Emphasis added.) In making that decision, the trial court should consider the factors enumerated in R.C. 3113.215(B)(3) and 3111.13(E).

In *Marker v. Grimm, supra,* the Ohio Supreme Court reminded the lower courts that the "overriding concern of the law is 'the best interest of the child' for whom support is being awarded. This fact is evident from R.C. 3113.215, where the phrase 'best interest of the child[ren]' is used thirteen times." *Id.,* 65 Ohio St.3d at 141, 601 N.E.2d at 498.

While we have already concluded that the juvenile court did not abuse its discretion in utilizing the worksheet and guidelines to the extent that they were in effect for each given year, we conclude appellees' second assignment of error has merit. We therefore reverse and remand this cause for a recalculation by the juvenile court of the amount of back support owed appellees and for a determination of whether the amount of back and current child support payments are just and appropriate and in the best interest of the child. Garnishment of appellant's wages may be adjusted accordingly. All other assignments of error are overruled, and the remainder of the juvenile court's judgment is affirmed.

*Judgment accordingly.*

KRUPANSKY, P.J., and WEAVER, J., concur.