JOURNAL ENTRY AND OPINION.
{¶ 1} Plaintiff-appellant, M.A.H.[1] ("Mother") and cross-appellant, the Cuyahoga Support Enforcement Agency ("CSEA") appeal from a decision of the Cuyahoga County Court of Common Pleas, Juvenile Division, which rendered judgment against defendant-appellee, S.F. ("Father") in favor of the child ("M.W.H.") in the amount of $110,493.15, for past due support. For the following reasons, we affirm the trial court's decision in part, reverse the decision in part, and remand this case for further proceedings. The child, M.W.H., was born on April 9, 1982 after a brief encounter between the mother and father. The father was informed of the child's birth in 1982, but refused to support or have any contact with her. On August 15, 1990, the mother filed an action in Cuyahoga County to determine paternity and for an award of child support. On September 24, 1990, the father filed an answer denying paternity and submitting to the Juvenile Court's jurisdiction. On June 14, 1991, the father was found to be the father of M.W.H., following the results of court-ordered genetic testing.[2]
 {¶ 2} On June 24, 1991, the trial court issued an interlocutory order granting custody to the mother, visitation to the father and ordering interim support in the amount of $1,000 per month, pursuant to the agreement of counsel. No child support worksheet was completed by the court at this hearing and attached to the support order. The trial court adopted the report on July 17, 1991. In May 1997, CSEA became a new-party defendant. CSEA filed motions for discovery to obtain proper financial information in order to obtain a final current and past support order and a health insurance order. On January 12, 2001, the father was ordered to enroll the child in medical/health insurance through Blue Cross/Blue Shield of New Mexico.
 {¶ 3} On January 28, 2002, trial began. At trial, the mother testified to long periods of homelessness and joblessness. She testified that she has been diagnosed with intestinal colitis and has been classified as permanently and totally disabled by the United States Department of Education. She testified that M.W.H. has special physical and mental needs and has experienced emotional trauma through much of her minority.
 {¶ 4} M.W.H. also testified at trial. She corroborated her mother's testimony regarding her troubling childhood. She testified to extended periods of homelessness and time away from her mother where she was taken care of by other family members and friends. She stated that she skipped a lot of school and had to repeat her freshman year because she was not living in the school district because her house was condemned. She stated that she was able to maintain her enrollment in school through independent study programs offered by her school.
 {¶ 5} Next, Harold Steven Wright testified that he was the accountant and business manager of the father. He testified that the father is a self-employed musician and the sole stockholder and president of Claybourne Productions, a Subchapter S corporation created to limit his exposure for legal liability. He testified with regards to the income history of the father. He stated that the father's yearly income was subject to fluctuations and was in a state of decline due to conditions in the music business. He stated that the father's gross income had to be derived from his 1040 returns, tax schedules A and C, and the K1 form of the corporate tax return.
 {¶ 6} Finally, the father testified about his training and career as a professional musician. He testified that his income level was declining due to his age and changes in the music industry. He admitted that he had no contact with M.W.H., that he pays support for two other children from a prior marriage, and has another child born out of wedlock that he has no contact with and does not support. He admitted that he had at times withheld child support and health insurance in violation of the court's 1991 interim order of support.
 {¶ 7} On June 17, 2002, the trial court filed a judgment entry finding that the father had an obligation to support M.W.H., retroactive to the date of her birth. The court found the support obligation ended on M.W.H.'s eighteenth birthday, April 9, 2000, because M.W.H. had not been enrolled in school at the time. The court awarded judgment to the minor child, and not the mother, from M.W.H.'s birth date until the date paternity was established at the rate of $1,000 per month, for a total of $110,493.15.
 {¶ 8} It is from this decision that the mother and CSEA now appeal and raise five assignments of error and three cross-assignments of error that we address together and out of order where appropriate.
 {¶ 9} "I. The trial court abused its discretion and committed prejudicial error by finding the parent's duty of support terminated effective April 2, 2000.
 {¶ 10} "Cross-Assignment of Error III. The trial court erred in terminating the current child support order and emancipating the child, [M.W.H.] as of her eighteenth birthday where the child was continuously enrolled in an accredited high school, and same was against the manifest weight of the evidence."
 {¶ 11} The trial court determined that "`the parents' duty of support of their child terminated as of April 9, 2000, the child's eighteenth birthday. As of that time, the child was out of school and had been out of school for quite some period of time. She did not re-enroll until March 2001. The parent's duty of support did not revive * * *."
 {¶ 12} Pursuant to R.C. 3119.86, child support orders remain in effect after a child's eighteenth birthday while he or she "continuously attends on a full-time basis any recognized and accredited high school," but do not remain in effect after the child's nineteenth birthday except in cases in which the child is mentally or physically disabled or the child's parents have agreed to extend the duty of support. R.C. 3119.86(B).
 {¶ 13} Here, the record reflects that M.W.H. was enrolled at Mountain Frazier High School from August 1997 through March 2001. Although the record demonstrates that M.W.H.'s high school education was disrupted for short periods of time due to incidents of homelessness and illness, M.W.H. testified that she was enrolled in a program of independent study approved by the high school during that time. (Tr. 92-93, 95, 96, 97, 98-99, 103).
 {¶ 14} R.C. 3119.86 does not define what it means to "continuously attend" high school. The father argues that M.W.H. was "participating" in high school as opposed to "attending" high school. Our review of the case law offers little help with regard to the the intent of the legislature regarding attendance at high school. However, we find some guidance in the Ninth District's decision in Weber v. Weber (May 23, 2001), Lorain Cty. App. No. 00CA007722 (a child who attends an off-campus instruction course is not rendered an emancipated individual for the purpose of child support) and the Seventh District's decision in Brown v. Brown (Dec. 27, 1995), Mahoning App. No. 94 C.A. 172 (a child who is home schooled by his mother is not rendered an emancipated individual for the purpose of child support).
 {¶ 15} We believe that the evidence before the trial court established that M.W.H. was attending high school at the age of 18 for purposes of the statute while she was engaged in an accredited course of study offered and conducted by Mountain Frazier High School. Since the record shows that M.W.H. turned 19 on April 9, 2001, the father was obliged to support her until that date. The mother's first assignment of error and CSEA's third cross-assignment of error are well-taken and are sustained. "II. The trial court abused its discretion and committed prejudicial error by rendering judgment for past due support in favor of the parties' daughter [M.W.H.]."
 {¶ 16} The trial court determined that the past due support was to be awarded to M.W.H. In awarding judgment in favor of M.W.H. and not the mother, the trial court specifically found that "the mother contributed little to the support of her daughter. As evidenced by her own Stipulations of earnings and testimony, her grandmother, other family members and her mother's friends principally supported [M.W.H.] * * *. To award past due support to the Plaintiff Mother, rather than the child would be to create a current windfall to the mother which is not supported by these facts or in case law or equity."
 {¶ 17} As a general rule, child support arrearage is an asset of the residential parent because there is a presumption that the child was clothed, fed and given the necessities of life by that parent. Seegertv. Zietlow (1994), 95 Ohio App.3d 451. This presumption, however, only applies "in the absence of evidence to the contrary." Id.
 {¶ 18} Here, the trial court found that the evidence in the record rebutted the presumption that the mother spent funds on necessities for raising M.W.H. The record shows that the mother has not been employed since 1990 and has had no earned income since that time. At various times in her life she was homeless or living in substandard housing and that M.W.H. shared these homelessness periods with her mother. In 1994 and 1995, M.W.H. lived at a boarding school provided by her maternal grandmother. In 1996 and 1997, M.W.H. lived on her own with friends in California. In 2000, M.W.H. lived in Ohio with her maternal grandmother. At trial, M.W.H. testified that "my whole life [my grandmother] was the main person who supported me." (Tr. 82). The trial court specifically found that "the mother contributed little to the support and necessaries of the child. Except for the years 1982, 1986 and 1987, [M.W.H.] was almost completely supported by others."
 {¶ 19} We believe that there was competent, credible evidence before the trial court that the mother did not provide M.W.H. with necessities except for a limited period of time. Thus, the presumption that the funds sought by the mother were advanced by the mother for the benefit of M.W.H. was rebutted. Since the mother was unable to refute this evidence, the trial court did not abuse its discretion in awarding past due support directly to M.W.H. rather than to the mother. The mother's second assignment of error is overruled.
 {¶ 20} "IV. The trial court abused its discretion in failing to complete and make a part of its judgment entry applicable child support guideline worksheets."
 {¶ 21} In this assignment of error, the mother claims that the trial court's failure to include a completed child support worksheet in the record is prejudicial error. We agree.
 {¶ 22} Pursuant to R.C. Chapter 3119, a trial court must actually complete a child support worksheet and make that completed worksheet a part of the record when it is making a child support determination. Markerv. Grimm (1992), 65 Ohio St.3d 139. This requirement is mandatory in nature and must be followed literally and technically in all material respects. Id. The trial court is to follow this requirement in order to ensure its order is subject to meaningful appellate review. Id. at 142. The failure to do so constitutes an abuse of discretion. Rock v. Cabral
(1993), 67 Ohio St.3d 108.
 {¶ 23} It is not erroneous when the trial court fails to complete its own worksheet as long as the court clearly adopts one of the parties' worksheets. Anderson v. Anderson (2002), 147 Ohio App.3d 513. However, the adopted worksheet must be a fully completed worksheet containing all of the information the trial court relied upon as mandated by statute. Id. It is reversible error for a trial court to include only a partial or incomplete worksheet in the record. Brown v. Brown (Apr. 4, 2001), Summit App. No. 20177; Blake v. Blake (May 4, 1995), Gallia App. No. 94CA16.
 {¶ 24} Here, the trial court failed to include a fully completed child support worksheet in the record. Rather, the worksheets attached to the judgment entry cover the period of time from M.W.H.'s birth until 1991, the date paternity was established. Moreover, these worksheets, one prepared by CSEA and one prepared by the father, were not adopted by the trial court. Indeed, the trial court specifically noted in its judgment that the attached worksheets were for "illustration" only. (J.E. p. 6). Accordingly, the trial court has committed reversible error.
 {¶ 25} Because of this error, we cannot review the mother's third and fifth assignments of error and CSEA's first and second cross-assignments of error. In those assignments of error, the mother and CSEA argue that the trial court erred in its calculation of the past-care award and by not justifying its deviations from the child support guidelines with findings of fact. R.C. 3119.03 creates a rebuttable presumption that the amount calculated by the basic child support schedule and applicable worksheet is the correct amount of child support due. Without a fully completed child support worksheet, we cannot tell whether the trial court did or did not abuse its discretion in awarding $1,000 per month and by deviating from the statutorily presumed correct amount of child support. Accordingly, the trial court's failure to complete that worksheet is reversible error which precludes us from addressing the mother's third and fifth assignments of error and CSEA's first and second cross-assignments of error.
 {¶ 26} Accordingly, the decision of the trial court is affirmed in part, reversed in part and this cause is remanded to the trial court for further proceedings consistent with this Court's opinion.
KENNETH A. ROCCO, A.J., and TIMOTHY E. McMONAGLE, J., concur.
[1] The parties are referred to herein by their initials or title in accordance with this Court's established policy.
[2] The genetic tests were filed with the court on April 18, 1991.