IVERSON, Respondent v. IVERSON, Appellant

(241 N.W.2d 583)

(File No. 11605. Opinion filed May 6, 1976)

**Warren W. May** of **May, Porter, Adam, Gerdes & Thompson,** Pierre for plaintiff and respondent.

**Charles Rick Johnson**, of **Johnson, Johnson & Eklund,** Gregory, for defendant and appellant.

WOLLMAN, Justice.

Defendant husband has appealed from the property award and child support provisions of the judgment granting plaintiff wife a divorce for the fault of defendant. We affirm.

The parties were married on September 19, 1968. Plaintiff was nineteen years old at the time; defendant was twenty-two.

One child, a daughter, who was four years old at the time of trial in July of 1974, was born during the marriage.

After her marriage to defendant, plaintiff, who had been born and reared in Pierre, South Dakota, moved to a ranch some twelve miles northwest of Murdo, South Dakota, where she and defendant lived with defendant's father, John Iverson, who died in April of 1970. Plaintiff testified that notwithstanding her urban background she enjoyed life on the ranch and assisted defendant in such activities as catching and tagging newborn calves on the range during the spring of the year as a part of defendant's livestock production testing program. Indeed, at one point during the marriage plaintiff borrowed money from a bank in Kennebec in order to buy some livestock. At the time of trial she owned thirteen cows, two heifer yearlings, and ten calves.

The marriage was destined not to be a smooth or happy one inasmuch as defendant frequently left plaintiff and her young child at the ranch for extended periods while he journeyed to places such as Winner and Pierre, where he spent considerable time drinking in bars. As plaintiff described the situation, defendant would leave the ranch on a Thursday or Friday, not to be seen again by plaintiff until she returned from church with her daughter on Sunday morning, at which time defendant would express remorse for his activities and promise not to repeat them. He would then spend several days recuperating from his jaunts to town, all the better to be prepared to leave the following weekend. During the time that he was present at the ranch defendant frequently slept until noon and would quite often ask plaintiff to tell the hired man that he, defendant, was not available when the hired man came to the ranch house to ask for instructions about the work that he was to do on the ranch.

In addition to his frequent unexplained absences from home, defendant began mistreating plaintiff physically. For example, plaintiff and defendant went to California to visit defendant's sister and brother-in-law during the 1973 Christmas vacation season. While they were there, defendant came home from a trip to Tijuana, Mexico, in an intoxicated condition. Upon being questioned by plaintiff about his absence, defendant became

angry. He slapped plaintiff, striking the young daughter in the process, grabbed plaintiff by the hair and threw her to the bed, leaving a large bruise on her arm. On another occasion, plaintiff became upset with defendant when she found him talking to a go-go girl in a Fort Pierre, South Dakota, bar. After plaintiff and defendant went out to their car, defendant slapped plaintiff and pulled her hair, leaving plaintiff with bruises on her arms and a split and swollen lip.

On an occasion in September of 1973, plaintiff observed defendant's car parked behind still another bar in Fort Pierre. Upon going into the bar in search of her husband, plaintiff found him sitting with a woman, as it turned out, a child psychologist from Denver, who informed plaintiff that she should not feel threatened or upset if she, the child psychologist, slept with defendant that night. Not desiring to participate further in this conversation, plaintiff left the bar after informing defendant that she would meet him at the Holiday Inn in Pierre after attending her sister's wedding shower. When she went to the appointed place to meet defendant, plaintiff found him talking on the house telephone and heard him say, "I really want to go to bed with you," at which time plaintiff hung up the phone and asked defendant whom he was talking to. Defendant replied that he had just received the call, didn't know who it was and hadn't yet said a word to the calling party. Defendant then left plaintiff and walked directly to a room at the motel. Plaintiff left and returned to the ranch home. Defendant arrived home at about four o'clock the following morning.

As a result of other dalliances on defendant's part, plaintiff suffered adverse physical consequences more serious than those detailed above, requiring her on at least two occasions to seek medical treatment, the nature of which we deem it unnecessary to detail here.

As might be gathered from the foregoing summary of a portion of the evidence regarding plaintiff's claim of extreme cruelty, defendant does not contest the fact that plaintiff had grounds for divorce. We recount this evidence to illustrate some of the factors that the trial judge justifiably took into account in making an

equitable division of property between the parties. As far as the record indicates, plaintiff was not guilty of any misconduct, either of a sexual nature or otherwise, during the course of the marriage. We will not dwell upon the contents of a post-trial brief filed by defendant's trial counsel (defendant's present counsel did not represent him at trial).

By the terms of his father's will, defendant stands to inherit all of his father's real and personal property, subject to a bequest to defendant's sister in the amount of $50,000, which is to be paid by defendant from his father's estate at the rate of $1,000 per year for a period of twenty years, and then at the rate of $1,500 per year until the balance is paid in full; and subject further to a bequest to defendant's mother, payable by defendant at the rate of $100 per month until defendant's mother reaches the age of sixty years (she was born in 1926). At the time of trial in 1974, the only matter that remained to be completed prior to the entry of a decree of distribution was the payment of some $36,000 in federal estate taxes, an amount that defendant was in the process of attempting to have reduced.

Including the property that defendant purchased at the partition sale held in response to this court's decision in Iverson v. Iverson, 87 S.D. 628, 213 N.W.2d 708, defendant owned in his own name and by reason of the imminent decree of distribution in his father's estate some 5700 acres of farm and ranch land in Jones County, South Dakota. Plaintiff's expert witness placed a trial-date value on this real estate of $150 per acre. The trial court placed a value of some $100 per acre on the land for purposes of determining defendant's net worth. After taking into account defendant's other assets, which consisted of livestock, farm machinery and other personal property, and deducting a mortgage to the Federal Land Bank in the amount of approximately $149,000, together with other smaller indebtednesses to other creditors, the trial court determined that defendant had a net worth of some $500,000.

The trial court awarded plaintiff child support in the amount of $350 per month. To insure payment, the judgment provides that defendant's interest in the real estate described above be

subject to a lien and further provides that if defendant's interest in said property is sold, a net sum of $50,000 from the proceeds shall be held in trust by a named bank for the payment of the child support payments, the amount held in trust to be subject to being reduced as the child advances in years.

The judgment further provides that defendant pay plaintiff the sum of $5,000; that plaintiff be given the ownership of certain personal property, the description of which is immaterial here; and that plaintiff be decreed to be the owner of an undivided fifteen percent interest in the real estate described above, such interest to be subject to fifteen percent of the indebtedness owing on the mortgage to the Federal Land Bank.

The judgment also provides that defendant pay attorney's fees in the amount of $2500 to plaintiff's attorneys.

SDCL 25-4-41 provides that:

"Where a divorce is granted for an offense of the husband, the court may compel him to provide for the maintenance of the children of the marriage, and to make such suitable allowance to the wife for her support during her life or for a shorter period, as the court may deem just, having regard to the circumstances of the parties represented; and the court may from time to time modify its orders in these respects."

SDCL 25-4-42 provides in part that:

"The court may require the husband to give reasonable security for providing maintenance, or making any payments required under the provisions of this chapter, and may enforce the same by the appointment of a receiver, or by any other remedy applicable to the case. * * * "

Although the award of $350 per month for child support strikes us as being quite generous, we are not persuaded that the trial court abused its discretion in setting the award at this

amount in view of the testimony concerning plaintiff's earning capacity and the cost of providing a suitable home for herself and her daughter. At the time of trial plaintiff was earning $2.00 per hour as a sales clerk in a retail business establishment in Rapid City, South Dakota; her net take-home pay amounted to some $69.52 per week. She testified that she had attempted to obtain a better paid position but had been unable to find one.

■ Defendant attempted to impeach plaintiff's testimony that she was unable to find suitable housing at a lower rental rate by asking the plaintiff to read and comment on apartment rental ads in a Rapid City newspaper during her adverse examination. Although this testimony fills some ten pages of the transcript, it is hardly so conclusive that it demonstrates that the trial court was in error in determining that plaintiff would require $350 a month in child support to maintain the child in a manner commensurate with that which plaintiff was able to do prior to the separation and divorce. Although the record indicates that plaintiff is living in very comfortable surroundings and indeed might find it possible to forego some of the amenities to which she has apparently become accustomed, after considering the standard of living which she and the child were rightfully entitled to enjoy in defendant's home we are not convinced that the trial court abused its discretion in fixing the amount of the award or in imposing a trust lien to insure payment.

Defendant is presently leasing the ranch property for $42,000 per year. He contends that because his fixed obligations, consisting of payments of interest and principal on the Federal Land Bank mortgage, real estate taxes, payments to his sister and his mother under the provisions of his father's will, and installment payments on the federal estate tax liability, will total some $34,000 per year, to say nothing of the maintenance expenses on the ranch and the payment of federal income taxes on the net rental proceeds, the award to plaintiff of a fifteen percent interest in the real estate is excessive and unworkable.

SDCL 25-4-44 provides in part that:

"Where a divorce is granted for an offense of either

husband or wife, the courts shall in such action have full power to make an equitable division of the property belonging to either or both, whether the title to such property is in the name of the husband or the wife. In making such division of the property the court shall have regard for equity and the circumstances of the parties."

The principal factors to be considered by the trial court in making a division of property between the parties in a divorce action are

"The duration of the marriage, the value of the property of each, their ages, their health and competency to earn, the contribution of each to the accumulation of the property and the faults and circumstances leading up to the divorce." Kressly v. Kressly, 77 S.D. 143, 148, 87 N.W.2d 601, 603.

■ Defendant contends that because little if any of the property that he now has an interest in was acquired during the duration of the marriage and because the bulk of his property consists of the inheritance from his father's estate, the award of fifteen percent is clearly excessive. Although it is true in Swenson v. Swenson, 85 S.D. 320, 181 N.W.2d 864, and De Witt v. De Witt, 86 S.D. 59, 191 N.W.2d 177, we pointed out that a substantial portion of the property owned by the defendants therein had been acquired by inheritance, we also pointed out in the Swenson case that "While the court may consider when and how the property was accumulated, it is not obligated to do so." 85 S.D. at 324, 181 N.W.2d at 866. See also Peterson v. Peterson, 71 S.D. 314, 24 N.W.2d 35. Moreover, it is clear from the record in this case that the trial court considered all of the factors mentioned in the Kressly case, supra, in making a division of the property between the parties, and specifically referred to the fact that the bulk of defendant's property came to him by way of inheritance from his father's estate. The record reflects that the trial court made a conscientious, studied effort to make an award that would be fair to plaintiff and yet enable defendant to continue to operate his ranch as an ongoing, economically solvent enterprise. If, as he

contends, defendant is unable to operate the ranch in a manner that will produce income sufficient to meet his obligations, that would appear to be a consequence of his own indifference, immaturity and profligacy and not the result of the trial court's well-considered division of the property between the parties. Cf. Kuehn v. Kuehn, 74 S.D. 521, 55 N.W.2d 70.

■ Finally, although not questioning the amount of the award, defendant contends that the trial court erred in awarding attorney's fees to plaintiff in view of the substantial award of property to plaintiff. Although plaintiff was awarded the sum of $5,000 cash, the bulk of the award of property to her was not in the form of liquid assets. Accordingly, we find no error here.

The judgment is affirmed.

DUNN, C. J., and WINANS and COLER, JJ., concur.