1998 SD 113

**In the Matter of the Support Obligation of David LOOMIS, Absent Parent.**

No. 20226.

Supreme Court of South Dakota.

Argued April 29, 1998.

Reassigned June 19, 1998.

Decided Nov. 18, 1998.

Debra D. Watson of Watson Law Office, Rapid City, for appellant.

Mark W. Barnett, Attorney General, John H. Fitzgerald, Special Assistant Attorney General, for appellee.

MILLER, Chief Justice (on reassignment).

[¶ 1.] In this opinion we hold that, under the facts of this case, the mother of an out-of-wedlock child is barred by the equitable doctrines of laches and estoppel from receiving retroactive child support.[1]

## FACTS

[¶ 2.] In October 1982, David Loomis and Linda Teller had a brief sexual encounter in Gillette, Wyoming. Teller gave birth on July 15, 1983. Neither during the pregnancy nor afterwards did she tell Loomis that he fathered her child, even though they both lived in Gillette for approximately three years after the birth.[2]

[¶ 3.] When she was fourteen years old, the child told her mother that she wanted to know who her father was and where he lived. To locate Loomis, Teller apparently sought the assistance of a social service agency. Ultimately, in December 1996, the South Dakota Office of Child Support Enforcement notified Loomis that Teller claimed he fathered her fourteen-year-old daughter. Teller sought current ongoing child support, plus an amount for accrued child support for the preceding six years.

[¶ 4.] After a blood test, which confirmed Loomis' paternity, he never challenged his paternity or his duty to pay ongoing child support. He did, however, object to having to pay past child support because of Teller's conduct of not telling him for fourteen years that he had a daughter.

---

1. We must first note that SDCL 25–8–5, which allows a mother to recover past child support, is a statute that allows a *mother* to be reimbursed for past child support she has furnished. Under the dictates of the statute, the mother is the one who brings the action. The statute also directs that "the mother" may "recover" support, but not more than six years' of the support that has already been "furnished." Therefore, the plain language of the statute states that it is a means for the mother to be reimbursed for support she has already provided to the child. It is not a statute dealing with child support arrearages or any debt a father owes directly to a child.

2. Teller admitted during the hearing in front of the referee that she intentionally prevented contact between Loomis and their daughter for fourteen years.

[¶ 5.] After an administrative hearing, the referee recommended that, based on the child support guidelines, Loomis owed $21,343.52 in retroactive support. However, he recommended that amount be reduced to $14,000, finding a substantial deviation appropriate considering Loomis' present financial condition and Teller's long delay in seeking support. The circuit court accepted the referee's recommendations and entered an order denying Loomis' objections. He appeals, contending the circuit court abused its discretion in failing to apply the equitable doctrines of laches and estoppel to bar Teller's claim for retroactive child support. We reverse and remand.

### STANDARD OF REVIEW

[¶ 6.] When the circuit court has adopted a child support referee's findings and conclusions, we apply the clearly erroneous standard of review to the findings and give no deference to conclusions of law. *Wolff v. Weber*, 1997 SD 52, ¶ 7, 563 N.W.2d 136, 138 (citing *Whalen v. Whalen*, 490 N.W.2d 276, 280 (S.D.1992)); *Janke v. Janke*, 467 N.W.2d 494, 497 (S.D.1991). In applying this standard, we will not reverse findings of fact unless we are left with a definite and firm conviction a mistake has been made. *Janke*, 467 N.W.2d at 497.

[¶ 7.] In child support cases, the question of whether laches is an available defense is an issue of law. *Fisco v. Department of Human Servs.*, 659 A.2d 274, 275 (Me.1995); *see also Archer v. Archer*, 907 S.W.2d 412, 416 (Tenn.Ct.App.1995) (application of laches defense presents a mixed question of law and fact reviewable de novo). Furthermore, whether equitable estoppel will deny Teller the right to bring an action for back child support against Loomis is fully reviewable as a mixed question of law and fact. *Crouse v. Crouse*, 1996 SD 95, ¶ 14, 552 N.W.2d 413, 417.

### DECISION

[¶ 8.] **1. The circuit court erred in not applying the equitable defenses of laches and estoppel to bar Teller's claim for retroactive child support.**

[¶ 9.] We initially address Teller's claim that SDCL 25-8-5 is a legislative determination that the equitable defenses of laches and estoppel cannot be applied in such a case. The interpretation of a statute is a question of law. *See Moss v. Guttormson*, 1996 SD 76, ¶ 10, 551 N.W.2d 14, 17. We will give words in a statute their plain and ordinary meaning where possible. *In re Estate of Gossman*, 1996 SD 124, ¶ 6, 555 N.W.2d 102, 104.

[¶ 10.] SDCL 25-8-5 provides:

The mother may recover from the father a reasonable share of the necessary support of a child born out of wedlock.

In the absence of a previous demand in writing served personally or by registered or certified letter addressed to the father at his last known residence, not more than six years' support furnished before bringing an action may be recovered from the father.

[¶ 11.] Nothing in this statute indicates the legislature intended to abrogate a father's rights to assert equitable defenses. What the legislature has done in SDCL 25-8-5 is to establish a maximum time span for which a father of a child born out of wedlock can be required to pay past child support. Had it intended to somehow totally supplant a father's right to assert equitable defenses, it could have specifically stated so.

[¶ 12.] Having decided that Loomis had a right to raise the equitable defenses of laches and estoppel, we will next examine whether it was error for the circuit court not to apply those defenses.

#### a. Laches

[¶ 13.] In order for laches to bar any recovery for Teller, it must be shown that, "(1) she had full knowledge of the facts upon which the action is based, (2) regardless of this knowledge, she engaged in an unreasonable delay before commencing the suit, and (3) that allowing her to maintain the action would prejudice other parties." *Conway v. Conway*, 487 N.W.2d 21, 24 (S.D.1992) (citations omitted) (emphasis omitted).

[¶ 14.] It is apparent that Teller had full knowledge of the facts upon which the action is based. She knew from the very beginning that Loomis was the father of the child, yet she did not reveal it to him until the child was fourteen years old.

[¶ 15.] The fact that she waited fourteen years before bringing an action for child support also constitutes an unreasonable delay. In *State v. Garcia*, 187 Ariz. 527, 931 P.2d 427, 428–29 (Ariz.Ct.App.1996), the court held there was an unreasonable delay and laches applied because neither the mother nor the state sought child support for more than sixteen years. This was true, even though the father lived across the street from the mother's family. *Id.* at 429. It is also interesting to note that in *Garcia*, unlike the present case, the mother told the father the child was his while she was still pregnant. *Id.* at 428; *see also Wigginton v. Commonwealth*, 760 S.W.2d 885 (Ky.App.1988) (holding that a claim for support arrearages was barred by laches because a mother did not bring a paternity action for fifteen years). In the present case, Teller waited fourteen years, even though they lived in the same town for the first three years.

[¶ 16.] The last factor to consider is whether allowing Teller to maintain her claim for retroactive child support would prejudice Loomis. The prejudice to Loomis is quite clear if he is forced to make such payments.[3] Loomis has a current family consisting of a wife and two minor children. Now, in addition to the expenses in supporting his family, as well as the current support he now pays to the child he had with Teller, he is being asked to pay additional payments in the amount of $14,000. He also has placed the child on his health insurance plan. From his current conduct, it seems obvious that, had he known all along that the child was his, he would have supported her and also been able to develop some sort of relationship with her. *See Garcia*, 931 P.2d at 429 (holding father would be prejudiced if forced to pay arrearages for sixteen years because he had other children to support, other financial obligations, and was never allowed to develop a

relationship with his son); *Moore v. Hafeeza*, 212 N.J.Super. 399, 515 A.2d 271, 275 (1986) (holding that a mother's fifteen-year delay in bringing a claim for child support was prejudicial, because father was denied right to develop a relationship with his child and he also incurred other financial obligations).

*b. Equitable estoppel*

[¶ 17.] "Equitable estoppel is based on fair dealing, good faith and justice." *D.G. v. D.M.K.*, 1996 SD 144, ¶ 37, 557 N.W.2d 235, 242. Four factors must be met in order for equitable estoppel to bar recovery: (1) a false representation or a concealment of material facts; (2) the victim must have been without knowledge of the real facts; (3) the representation or concealment must have been made with the intent that it be acted on; and (4) the victim must have relied on the misrepresentation or concealment creating prejudice or injury. *Crouse*, 1996 SD 95, ¶ 14, 552 N.W.2d at 417. "There can be no estoppel if any of these essential elements are lacking, or if any of them have not been proved by clear and convincing evidence." *Id.*

[¶ 18.] We find there was a concealment of material facts in this case. Teller stated under oath that she did very little to try and contact Loomis. Then she further admitted she intentionally prevented contact between Loomis and his daughter for those fourteen years, even though he lived in the same town for the first three of those years. It was only at the request of her daughter that she finally took steps towards contacting Loomis.

[¶ 19.] The second factor for equitable estoppel is also met, as Loomis was without knowledge of the real facts. There is no question he did not know for fourteen years that he had a child with Teller.

[¶ 20.] The third factor requires the concealment must have been made with the intention that it be acted on. Teller intentionally concealed Loomis' paternity from him, and thus, he was not allowed any relationship with his daughter. It seems apparent that had he known he had this daughter, he would

---

3. Even the referee also must have recognized a degree of prejudice, as he used it as a reason to

reduce the amount of arrearages that Loomis should be required to pay.

have paid support for her. This is evidenced by the fact that he is not contesting paternity or his obligation to pay current support.

[¶ 21.] The fourth and final factor is that Loomis must have relied on the concealment creating prejudice or injury. Once again, as in the situation with laches, the prejudice in this case is clear. Loomis has been denied a relationship with his daughter for fourteen years. Now, Teller is attempting to force him to pay retroactive support in the amount of $14,000. Loomis testified that he could have structured his life differently had he known about this daughter. If the decision of the circuit court is affirmed, then Loomis would be forced to pay $14,000 on top of his current support payments, while still trying to support his current family. *See State, Dept. of Human Servs. v. Irizarry*, 945 P.2d 676, 680–81 (1997) (discussing reliance and injury under an estoppel claim and stating that a father had relied to his detriment as shown by certain lifestyle choices and the effect back child support payments would have on his current family). .

[¶ 22.] It is important to reiterate that Loomis does not contest paternity or current support. Equity does not permit us to force Loomis to pay $14,000 in retroactive child support payments when Teller intentionally concealed the fact that he had a daughter. He would be greatly prejudiced to hold otherwise. We reverse the decision of the circuit court as Teller's claims are barred by the defenses of laches and equitable estoppel, and remand to enter an order consistent with this opinion.

[¶ 23.] Reversed and remanded.

[¶ 24.] AMUNDSON, Justice, concurs.

[¶ 25.] SABERS, Justice, concurs specially.

[¶ 26.] KONENKAMP and GILBERTSON, Justices, dissent.

SABERS, Justice (concurring specially).

[¶ 27.] I concur but write specially to point out that any judgment or modification of the judgment as proposed by the dissent would unnecessarily promote a multiplicity of actions. Of necessity, David (for himself and his family) would be foolish not to attempt to offset any such judgment by bringing actions against Linda for alienation of affections, intentional infliction of emotional distress, or tortious interference with the parent/child relationship as provided in *Hershey v. Hershey*, 467 N.W.2d 484 (S.D.1991).

[¶ 28.] Finally, Justice Konenkamp's dissent states: "How can we take the 'child' out of child support?" The simple answer is that the child is *not* in this case, and claiming this action is for support *for* the child does not alter that fact or put the child *in* the case. *See* n.1 of the majority opinion. Therefore, the premise of the dissent is fiction, not fact.

KONENKAMP, Justice (dissenting).

[¶ 29.] How can we take the "child" out of child support? Today this Court penalizes a child for the behavior of her parents. Fourteen years ago through irresponsible sexual relations, David and Linda brought a child into the world. That David was notified only recently makes Kristie no less his daughter and he no less her father. If her mother was dilatory, Kristie still has a right to back support from her father, just as she had the right to be supported by her mother over those same years. In the climate of bitter disputes, we must keep in mind the object of child support. It is neither punishment nor reward. Nor is it paid or withheld on a parent's good or bad conduct. Children's needs should never rest on such inconstancies.

[¶ 30.] To his credit, the father agrees to ongoing support, but nonetheless asserts that laches and equitable estoppel prohibit retroactive support. These defenses should be deemed unavailable because they prejudice the rights of children. Child support is a fundamental human right. Furthermore, our Legislature has by statute limited the recovery of back support to six years in paternity cases and provided other statutory remedies to alleviate financial hardship.

**Discussion**

[¶ 31.] Let us begin with a precept fundamental to our modern sense of morality and legal responsibility: Those who engage in sexual relations resulting in the birth of a child bear the burden of providing for that

child. By law, parents are jointly and severally obligated for the necessary maintenance, education, and support of their children. SDCL 25–7–6.1. "[F]ortuity of gender cannot determine the extent of a parent's obligation to his or her child." *W.M. v. D.S.C.*, 591 A.2d 837, 843 (D.C.1991). Truly, the right to support belongs to the children. *Weegar v. Bakeberg*, 527 N.W.2d 676, 679 (S.D.1995)(Amundson, J., concurring specially)(right to support is, fundamentally, right of the child). Thus, parents may not by private act or agreement bargain it away. *Estes v. Albers*, 504 N.W.2d 607, 609 (S.D. 1993).

[¶ 32.] It follows then that, lacking some extraordinary circumstance, parents may not through misconduct or mistake prejudice their children's right to support. *Stach v. Stach*, 369 N.W.2d 132, 135–36 (S.D.1985)(father still required to make child support payments despite mother's noncompliance with court's order to pay father his share of equity in marital home); *see Regynski v. State of Ariz.*, 414 N.W.2d 612, 614 (S.D. 1987)("Where child support is concerned, the *child's interest* is the primary consideration[.]"(emphasis in original)). The obligation to support one's children is "sacrosanct." *Golden v. Lewis*, 647 So.2d 979, 981 (Fla.Dist.Ct.App.1994); *see Mele v. Oliva*, 448 Pa.Super. 120, 670 A.2d 708, 709–10 (1996)(courts cannot allow the actions of the parties to control the determination of paternity and corresponding duty of support).

[¶ 33.] When, pursuant to SDCL 25–8–5, a mother attempts to "recover from the father a reasonable share of the necessary support of a child born out of wedlock," she is not just seeking reimbursement for a debt owed to herself.[4] She is enforcing, on behalf of the child, a shared obligation both parents owe to the child. *State of Cal. ex rel. Struck v.*

*Struck*, 526 N.W.2d 500, 502 (S.D.1995)(presumed that custodial parent spends child support received directly for the benefit of the child); *Vander Woude v. Vander Woude*, 501 N.W.2d 361, 364 (S.D.1993)(child support payments are for the children's benefit and not a debt due the custodial parent)(citing *Peterson v. Peterson*, 434 N.W.2d 732, 738 (S.D.1989)). *See also B.G.L. v. C.L.S.*, 175 Ind.App. 132, 369 N.E.2d 1105 (1977).[5] Our child support laws are designed not simply to furnish children with bare subsistence, so as to keep them off welfare, but to afford them a standard grounded in their needs considering what their parents can *jointly* provide. *Billion v. Billion*, 1996 SD 101, ¶ 41, 553 N.W.2d 226, 235. *See generally* Report of the South Dakota Commission on Child Support, December 1988; *cf.* SDCL 25–7–6.9.

[¶ 34.] Defenses such as laches and estoppel, which turn on the actions or inactions of consenting adults, fail to consider children's rights. South Dakota's statutory scheme creates a child-centered paradigm for resolving disputes between parents: Where the protection and support of children are concerned, the faults and failings of the parents cannot control. Under no circumstances can minor children be held accountable for laches or estoppel. For these reasons, and for the additional reasons set out below, a growing number of courts refuse to countenance equitable defenses in child support arrearage disputes, except in the rarest circumstances. *See* Rebecca C. Raskin, *Fisco v. Department of Human Services: The Inequity of Equitable Defenses in Child Support Arrearage Cases*, 48 MeLRev 153 (1996).

### A. Laches

[¶ 35.] With respect to the issue of ongoing support, most cases have held the affirmative defense of laches to be either inapplicable or

---

4. The majority interprets this statute to revive the archaic notion that unwed mothers may only obtain "reimbursement" from the fathers of their children for actual support the mothers "furnished." I suggest this is a stilted interpretation and overlooks the words "reasonable share of the necessary support."

5. Interpreting language identical to SDCL 25–8–5, the court in *B.G.L.*, 369 N.E.2d at 1109 wrote:

When the mother is reimbursed, the amounts paid will likely benefit the child by improving the financial situation of the mother and thereby enable her to provide her share of support for the child in the future and to provide better physical surroundings for the child.... Its order of support promotes the purpose of the act: to enable a child born out of wedlock to have those rights and privileges enjoyed by children born in wedlock.

unavailing in paternity actions.[6] Employing the doctrine would subvert the law's design for providing every child with parental support until age eighteen, or longer in certain circumstances. SDCL 25–5–18.1 (legal duty to support child until at least age eighteen). Nothing in our paternity statutes, SDCL ch. 25–8, suggests any legislative expectation that parental delay might adversely influence children's support rights. In fact, legal proceedings to "establish paternity and *enforce the obligation of the father* may be brought at *any time* before the eighteenth birthday of the child." SDCL 25–8–9 (emphasis added). So vital are the best interests of children in paternity actions that shorter limitations periods have been struck down as unconstitutional deprivations of equal protection. *See, e.g., Clark v. Jeter,* 486 U.S. 456, 462, 108 S.Ct. 1910, 1915, 100 L.Ed.2d 465 (1988); *Weegar,* 527 N.W.2d at 678.

[¶ 36.] The general rule, absent statutory preemption, recognizes a presumption of retroactivity of child support to the child's date of birth. *Cyrus v. Mondesir,* 515 A.2d 736, 739 (D.C.1986); *see J.A.W. v. D.M.E.,* 591 A.2d 844, 848 (D.C.1991)("the child's right to parental support begins at birth"); *Coleman v. Mackey,* 424 So.2d 170 (Fla.Dist.Ct.App. 1983); *Department of Revenue v. Roe,* 29 Mass.App.Ct. 967, 560 N.E.2d 1288, 1289 (1990); *State ex rel. Coleman v. Clay,* 805 S.W.2d 752 (Tenn.1991). A father's obligation to support his child is not contingent on a judgment of paternity; the judgment merely grants the right to enforce his obligation. *Weaver v. Chester,* 195 Ga.App. 471, 393 S.E.2d 715, 716–17 (1990)(superseded by

statute in other respects); *Commonwealth v. Chase,* 385 Mass. 461, 432 N.E.2d 510, 516–17 (1982); *Tidwell v. Booker,* 290 N.C. 98, 225 S.E.2d 816, 827 (1976)(superseded by statute in other respects). *See also Matchett v. Dunkle,* 244 Neb. 639, 508 N.W.2d 580, 583 (1993).

[¶ 37.] Most courts recoil from penalizing children for the dilatory acts of their parents. "Where child support is concerned, the child's interest is the *primary consideration.*" *Kost v. Kost,* 515 N.W.2d 209, 214 (S.D.1994)(emphasis in original) (citation omitted). It is one thing to fault those who sit too long on their own rights, but it is quite another to penalize children because someone else sat on their rights. "The child cannot be held responsible nor should the child be punished simply because the father was not aware of his child's birth nor because the paternity action was not begun earlier." *In re Paternity of Brad Michael L.,* 210 Wis.2d 437, 564 N.W.2d 354, 360 (Wis.App.1997)(action brought by child—father unaware of child's birth for fifteen years).[7] Retroactive support is not dependent on the father receiving notice. *In re Paternity of A.D.W.,* 693 N.E.2d 576, 578 (Ind.Ct.App.1998). "In the absence of extraordinary facts or strongly compelling circumstances, the action or inaction of a parent will not give rise to a defense of laches barring enforcement of child support arrearages." *Fowhand v. Piper,* 611 So.2d 1308, 1310 (Fla.Dist.Ct.App.1992)(quoting *Armour v. Allen,* 377 So.2d 798, 800 (Fla.Dist.Ct.App. 1979)); *see Parrish v. Department of Health*

---

6. *See, e.g., Perez v. Singh,* 21 Cal.App.3d 870, 97 Cal.Rptr. 920 (1971); *Cartee v. Carswell,* 425 So.2d 204 (Fla.Dist.Ct.App.1983); *People ex rel. Reeder v. Reeder,* 131 Ill.App.3d 841, 86 Ill.Dec. 874, 476 N.E.2d 50 (1985); *Howell v. Brummell,* 293 Md. 646, 446 A.2d 1149 (1982); *M.A.D. v. P.R.,* 277 N.W.2d 27 (Minn.1979); *McNulty v. Heitman,* 600 S.W.2d 168 (Mo.Ct.App.1980)(superseded by statute on attorney fee question); *State ex rel. Dep't of Human Serv. v. Davis,* 99 N.M. 138, 654 P.2d 1038 (1982); *Williams County Soc. Serv. Bd. v. Falcon,* 367 N.W.2d 170 (N.D.1985); *Roboski v. Fink,* 447 Pa.Super. 520, 669 A.2d 1017, 1017 (1996); *Shell v. Law,* 935 S.W.2d 402 (Tenn.App.1996); *Prejean v. Prejean,* 592 S.W.2d 660 (Tex.Civ.App.1979); *Nettles v. Beckley,* 32 Wash.App. 606, 648 P.2d 508 (1982); *Ellison v. Walter,* 834 P.2d 680 (Wyo.1992).

7. Some jurisdictions declare that the right to bring an action for current or past support belongs not to the parent, but to the child. *See State on Behalf of Hopkins v. Batt,* 253 Neb. 852, 573 N.W.2d 425 (1998); *N.M. v. J.G.,* 255 N.J.Super. 423, 605 A.2d 709 (1992); *McGlaston v. Cook,* 576 So.2d 1268 (Miss.1991); *Baggs v. Anderson,* 528 P.2d 141 (Utah 1974). SDCL 25–8–5, however, requires the mother in a paternity action to bring the action for support on behalf of a child born out of wedlock, at least at the outset. *See Weegar,* 527 N.W.2d at 679–80 (Konenkamp, J., concurring specially)(children should have coterminous or independent right to bring paternity action).

& *Rehabilitative Serv.*, 525 So.2d 1029, 1030 (Fla.Dist.Ct.App.1988). *See also Mele*, 670 A.2d at 709 (no evidence the father would have foregone marriage and children had action been brought earlier).

[¶ 38.] The doctrine of laches "simply does not apply" to claims for retroactive child support in paternity cases. *Knaus v. York*, 586 N.E.2d 909, 914 (Ind.Ct.App.1992)("This court will not penalize a child for his or her parent's delay in pursuing child support."); *see In re Marriage of Truax*, 522 N.E.2d 402, 407 (Ind.Ct.App.1988)(eight year delay in filing a petition may not be attributed to the children for whose benefit the child support was due). *See also Janssen v. Turner*, 292 Ill.App.3d 219, 226 Ill.Dec. 202, 206, 685 N.E.2d 16, 20 (1997)(rejecting argument that judgment for retroactive child support was a windfall for mother).[8]

[¶ 39.] Even if laches could somehow be invoked here, it would be inapplicable. David asserts Linda's claim for back support is barred because Linda never told him he was the child's father for fourteen years. "Mere passage of time is not the test." *Chicago & N.W. Ry. Co. v. Bradbury*, 80 S.D. 610, 612–13, 129 N.W.2d 540, 542 (1964) (citations omitted). Instead, to support laches it must be shown that: (1) Linda had full knowledge of the facts on which the action is based; (2) despite this knowledge, she engaged in an unreasonable delay before commencing suit; and (3) David would be prejudiced by allowing the action to proceed. *Conway v. Conway*, 487 N.W.2d 21, 24 (S.D. 1992); *Golden v. Oahe Enters., Inc.*, 90 S.D. 263, 277, 240 N.W.2d 102, 110 (1976).

[¶ 40.] Assuming the first two elements of laches have been proved, the last element has not. Linda may claim only six years of back child support. She cannot obtain retroactive support from the date of the child's birth. The Legislature has, by express statute, bridled the defense of laches by enacting SDCL 25-8-5, thus reconciling the competing interests between undue hardship on the father and the child's well-being in receiving adequate support. SDCL 25-8-5 provides:

> The mother may recover from the father a reasonable share of the necessary support of a child born out of wedlock.
>
> In *the absence of a previous demand in writing* served personally or by registered or certified letter addressed to the father at his last known residence, *not more than six years' support* furnished before bringing an action may be recovered from the father.

(emphasis added). With this statute, our Legislature has effectively eliminated the need to decide whether a mother has unreasonably delayed bringing an action for child support.

[¶ 41.] Faced with similar statutes, other courts have reached the same conclusion. The Idaho Supreme Court held:

> The legislature has weighed the equities of sheltering defendants like Annen from liability over an extended period of time and resolved the matter by statute. The public policy concerns about stale claims are adequately served by the three-year statute of limitations. *See Napowsa v. Langston*, 95 N.C.App. 14, 381 S.E.2d 882, 887 (N.C.Ct.App.1989)(refusing to apply laches to action for retroactive child support).

*State Dep't of Health & Welfare v. Annen*, 126 Idaho 691, 889 P.2d 720, 722 (1995). Likewise, in upholding a claim for past child support, the Minnesota Supreme Court stated in *M.A.D. v. P.R.*, 277 N.W.2d 27, 29 (Minn.1979):

> In 1971, the legislature added the following limitation to the paternity statutes: "The father's liabilities under this chapter for past education and necessary support of the illegitimate child are limited to a peri-

---

8. With respect to denial of equitable defenses in divorce arrearage cases see *Wornkey v. Wornkey*, 12 Kan.App.2d 506, 749 P.2d 1045 (1988)(laches not available because child support too important social concern); *Lyon v. Lyon*, 143 Vt. 458, 466 A.2d 1186 (1983); *Taylor v. Taylor*, 14 Va. App. 642, 418 S.E.2d 900 (1992); *Paterson v. Paterson*, 73 Wis.2d 150, 242 N.W.2d 907, 910 (1976)(equitable defense of laches is not available in a proceeding brought to secure enforcement of a child support order in a divorce action). *See generally* John C. Williams, Annotation, *Laches or Acquiescence as Defense, So as To Bar Recovery of Arrearages of Permanent Alimony or Child Support*, 5 A.L.R.4th 1015 (1981 & 1997 supp.)(collecting cases and analyzing whether laches may bar a *former spouse* from recovering arrearages of *court-ordered* alimony and child support).

od of 4 years next preceding the commencement of an action." Minn.St. 257.255. We have concluded that this section is an "express statute".... It reflects the same legislative concern as would an ordinary statute of limitations—that the legislature has considered the desirability of protecting the defendant from liability over an extended time period and resolved the matter by a statutory provision. Thus, laches is not available as a defense to a paternity action. Further consideration of its elements is therefore unnecessary.

(citation omitted). *See also Schaefer v. Weber,* 567 N.W.2d 29, 33–34 (Minn.1997)(citing two-year back support statute).[9] Another indication of legislative intent to forestall equitable defenses is in the discretion permitted in our child support guidelines allowing for a deviation in cases of financial hardship. *See* Section C below. Let us now turn to the defense of equitable estoppel.

### B. Equitable Estoppel

[¶ 42.] David argues that Linda should be estopped from seeking to enforce payment of back child support because she failed to tell him of the birth for fourteen years, depriving him of his legal rights as a parent.[10] Until today, we have never before applied the principles of equitable estoppel in a dispute over retroactive child support in a paternity case, but even if it were appropriate to do so, the defense is inapplicable here. To constitute equitable estoppel, each of the following elements must be proved by clear and convincing evidence: (1) a false representation or a concealment of material facts; (2) the victim

must have been without knowledge of the real facts; (3) the representation or concealment must have been made with the intent that it be acted on; and (4) the victim must have relied on the misrepresentation or concealment creating prejudice or injury. *Heupel v. Imprimis Tech., Inc.,* 473 N.W.2d 464, 466 (S.D.1991); *L.R. Foy Constr., Inc., v. South Dakota State Cement Plant Comm'n,* 399 N.W.2d 340, 344 (S.D.1987); *Taylor v. Tripp,* 330 N.W.2d 542, 545 (S.D.1983). "Essential to equitable estoppel is the presence of fraud, false representations, or concealment of material facts." *Crouse v. Crouse,* 1996 SD 95, ¶ 14, 552 N.W.2d 413, 417 (citing *Valley Bank v. Dowdy,* 337 N.W.2d 164, 165 (S.D.1983))(other citations omitted).

[¶ 43.] We see equitable estoppel most often in cases where a person obtains a benefit by taking one position, then later takes a position inconsistent with the first one, resulting in prejudice to other persons who relied on the original position. *See generally* H. McClintock, *Equity* § 31 (2d ed 1948). Linda's actions, though complacent and thoughtless, amount to nothing more than mere silence.[11] Failing to notify David of the child's existence is not misrepresentation or intentional concealment under the doctrine of equitable estoppel. Absent a duty to speak, a parent's mere silence over an extended time is, most often, insufficient to support an estoppel defense. *Adams v. Adams,* 593 P.2d 147, 148 (Utah 1979); *see also Zoe G. v. Frederick F.G.,* 208 A.D.2d 675, 617 N.Y.S.2d 370, 371 (1994)(doctrine of equitable estoppel triggered by conduct; mere silence or failure to disclose insufficient). *Cf. Burrow v. Vron-*

---

9. Some jurisdictions still allow a laches defense in actions seeking retroactive child support. *See, e.g., State v. Garcia,* 187 Ariz. 527, 931 P.2d 427 (Ariz.Ct.App.1996); *Seegert v. Zietlow,* 95 Ohio App.3d 451, 642 N.E.2d 697 (1994); *Hallums v. Hallums,* 296 S.C. 195, 371 S.E.2d 525 (1988). None of these cases dealt with a statute limiting back support as we have here, however.

10. David relies on this Court's holding in *Hershey v. Hershey,* 467 N.W.2d 484 (S.D.1991) in asserting a custodial parent may be estopped from seeking court-ordered child support from the noncustodial parent where the custodial parent has concealed the whereabouts of a child for an extended period of years. Although David's argument attempts to mirror the argument made

by the father in *Hershey,* we reserved judgment on the estoppel argument there. We went on to note in *Hershey* that based upon mother's concealment of the child since 1971, she *waived* her right to receive the court-ordered child support after 1971. That case is quite distinguishable in that the mother in *Hershey* waited until the child reached majority to seek arrearages. A number of courts have found this to be a valid reason to deny a custodial parent's arrearage claim.

11. The majority relies on defense counsel's leading question to state that the mother intentionally prevented contact between father and daughter. Nonetheless, the referee made no such finding, concluding only that she "did little if anything to notify" him.

*tikis*, 788 P.2d 1046 (Utah Ct.App.1990)(stating mother's assertion to mutual friend that she wanted nothing to do with father combined with father's reliance on this information was sufficient to bar mother's claim for back child support brought seven years after child's birth). In those courts where the defense is still viable, equitable estoppel may bar the recovery of child support arrearages only when the party asserting estoppel presents clear and convincing evidence to support such a finding and *when the welfare of the child will not be jeopardized. See Heupel*, 473 N.W.2d at 466; *L.R. Foy Const., Inc.*; 399 N.W.2d at 344; *see also Schnepp v. State ex rel. Dep't of Econ. Sec.*, 183 Ariz. 24, 899 P.2d 185, 190 (Ariz.Ct.App.1995)(quoting *State ex rel. Dep't of Econ. Sec. v. Dodd*, 181 Ariz. 183, 888 P.2d 1370, 1373 (Ariz.Ct.App. 1994)); *State Dep't of Human Serv. v. Irizarry*, 893 P.2d 1107, 1109 (Utah Ct.App.1995), *aff'd*, 945 P.2d 676 (Utah 1997)(equitable estoppel bars mother from seeking past child support where she repeatedly stated that she wanted nothing to do with father, refused support when it was offered, and he, in reliance, married and incurred other obligations); *Kimble v. Kimble*, 176 W.Va. 45, 341 S.E.2d 420, 431 (1986).

### C. Equitable Deviation In Setting Past Child Support

[¶ 44.] South Dakota law clearly allows for retroactive child support in paternity cases but does not specify how it should be calculated. Under SDCL 25-8-5, a mother "may recover a ... *reasonable* share of the necessary support ...." (emphasis added). Here, the referee used the child support guidelines to compute David's back support amount.[12] The guidelines were generally designed for prospective application. Nonetheless, I believe that in deciding what method to use in

ascertaining what is a "reasonable share" of back support, the relevant statutes and case law tend to indicate that the guidelines are presumptively applicable in determining the amount of a retroactive child support award. *See Linard v. Hershey*, 489 N.W.2d 599, 602 (S.D.1992)(applying SDCL ch. 25-7 to retroactive support in paternity action). *But see White v. Allen*, 667 A.2d 112, 114 (Me. 1995)("The child support guidelines do not apply to an award of past support"—term "necessary support" in statute allows reimbursement to mother of actual expenses); *Royston v. Stayton*, 859 S.W.2d 276, 277 (Mo.Ct.App.1993)(law of necessaries, rather than child support guidelines, applies to determine amount of award of retroactive child support for five-year period before paternity petition filed).

[¶ 45.] Our child support guidelines allow for an equitable adjustment when financial circumstances warrant it. SDCL 25-7-6.10 (deviation allowed when financial condition of either parent would make application of the schedule inequitable). *See Brandriet v. Larsen*, 442 N.W.2d 455, 460 (S.D.1989)(citing the 1985 Report Of the South Dakota Commission On Child Support, n. 3). The Child Support Commission's report states in part: "[T]he use of uniform guidelines has certain advantages, including: (4)[a]llows for deviation from the schedule for special circumstances upon specific findings." 1985 Report at 14. The Commission "felt that the guidelines should allow for consideration" of those circumstances in which a noncustodial parent had incurred substantial debts that could not have been anticipated at the time the child support obligation would commence. 1988 Report at 12. The report further noted:

The Commission discussed extensively a reference to the general financial condition

---

12. If the majority wants to punish the mother but protect the child, perhaps the back support could be placed in a trust. Some courts allow for the creation of a trust for various reasons, including the child's future educational needs or because of concerns the custodial parent might misuse a lump sum back support award. *See In re Paternity of Tukker M.O.*, 199 Wis.2d 186, 544 N.W.2d 417 (1996). *See also* Judith G. Mcmullen, *Prodding the Payor and Policing the Payee: Using Child Support Trusts to Create an Incentive for Prompt Payment of Support Obligations*, 32 New-

EngLRev 439 (1998). However, a trust on child support arrearages must be created only with the consent of the custodial parent or upon a finding that it is necessary to protect the best interests of the child, otherwise it undermines the custodial parent's decision making authority. *Cameron v. Cameron*, 209 Wis.2d 88, 562 N.W.2d 126, 135 (1997). In South Dakota divorce actions, support trusts are at least impliedly authorized. SDCL 25-4-42; *Iverson v. Iverson*, 90 S.D. 374, 379, 241 N.W.2d 583, 585 (S.D.1976).

of either parent as a deviation. Although the Commission has concerns about the potential abuse of such language, the Commission believes that there may be other financial conditions which would make the application of the guideline schedule inequitable. The Commission anticipates that there will be a high burden on the party seeking to utilize this deviation and that the deviation will not be used indiscriminately so as to destroy the purpose of the guidelines.

1988 Report at 13. By allowing for a deviation for unique financial circumstances, the Commission, and later the Legislature, avoided the destructive and needless problem of weighing fault between parents, as is done with equitable defenses, to arrive at a fair support amount when substantial evidence of financial hardship is shown. *Annen,* 889 P.2d at 722 (although laches not available, past support amount figured under guidelines may be adjusted for financial circumstances). Here, the child support referee found sufficient grounds for a deviation. I would affirm the decision, but would remand for a closer look at the father's present financial situation so that a fair amount of past support can be determined, in addition to a reasonable payment schedule.

[¶ 46.] The majority abandons a principle that ought to be too well-established and too fundamental to be lost: Child support cannot be withheld to punish miscreant parents. Even when parents behave in ways undeserving, children should not be made to suffer. In view of this decision, I can only hope that in the near future our Legislature will give even clearer direction on back support. I would also hope, that this Court will not further extend the defenses of estoppel and laches to the harm of innocents. But most of all, I pray today's ruling will not last long as this Court's otherwise unblemished legacy to South Dakota's children.

GILBERTSON, Justice (dissenting).

[¶ 47.] I respectfully dissent. To me this appeal presents three issues: (1) whether the doctrines of laches and estoppel are legally applicable in a case such as this and, if so (2) should they be applied to the facts of this

case and, if not (3) did the trial court abuse its discretion in setting the arrearages at $14,000? As issues (1) and (2) have been extensively set forth by the majority and the dissent of Justice Konenkamp, my major concern is with issue (3).

[¶ 48.] SDCL 25-8-5 is the statute which authorizes a mother of a child born out of wedlock to recover "a reasonable share of the necessary support of a child . . . . " While this is limited to six years, the statute is silent as to any other conditions. At common law this jurisdiction has long recognized the doctrines of laches and estoppel. Under SDCL 1-1-24, these doctrines remain in force unless "they conflict with the will of the sovereign power" as expressed in our statutes. Nowhere in the statute is there any definitive language that the six-year limitation is exclusive of all other defenses. In *Hershey v. Hershey,* 467 N.W.2d 484 (S.D.1991), we recognized the doctrine of waiver is applicable to this type of case. The fact in *Hershey* the child was already 18 goes to the doctrine's factual applicability only and not to whether it could be statutorily applied in the first place, for if statutorily forbidden the age of the child would be irrelevant. As such, together with the authority cited by the majority, I conclude the doctrines of equitable estoppel and laches are applicable to SDCL 25-8-5.

[¶ 49.] The second question is whether this case factually supports the application of laches and estoppel. These doctrines are affirmative defenses per SDCL 15-6-8(c). As such, Loomis has the burden of proof to support their applicability to this case. *Flynn v. Lockhart,* 526 N.W.2d 743 (S.D. 1995). The transcript of the hearing is a scant eleven pages. Both Teller and Loomis testified giving Loomis the opportunity to develop these claims. The sum total of Teller's testimony is one page:

REFEREE: Okay, Ms. Watson, questions for Ms. Teller?

MS. WATSON: Sure. I'd like to tell her, did you ever notify Mr. Loomis that he had a daughter?

MS. TELLER: No I didn't because I didn't [sic] where he was at this time when I was pregnant.

MS. WATSON: Well, you were able to find him for this child support proceeding, correct?

MS. TELLER: No.

MS. WATSON: Did you ever try to find him at all?

MS. TELLER: Yes I did.

MS. WATSON: What did you do to try to find him?

MS. TELLER: I tried to find him on my own and I couldn't, so I just left it.

MS. WATSON: So, has he had any relationship at all with your daughter for the last 14 years?

MS. TELLER: No.

MS. WATSON: And your first notice to him would have been in December of last year?

MS. TELLER: In December? Right.

MS. WATSON: So did you ever contact child support enforcement or any law enforcement agency or anybody to try and contact Mr. Loomis?

MS. TELLER: No, I did not.

MS. WATSON: Why did you wait 14 years to bring a paternity action?

MS. TELLER: I guess uh, Kristie wanted to know where her dad was at now and it [sic] about time, I guess, that they met.

MS. WATSON: Don't you think it would have been time when she was young so maybe he could have had a relationship with her and she could have had a relationship with him?

MS. TELLER: Yes, I did. I do make mistakes, I guess.

MS. WATSON: And you intentionally prevented contact between father and daughter for 14 years?

MS. TELLER: Right.

Loomis testified as to his finances but is totally silent as to any claim that the acts of Teller interfered with his right to establish a father-daughter relationship with Kristie. While the subject does come up, it does so only from Loomis' attorney as a "little history" and this clearly is not competent evidence. Attorneys cannot testify on behalf of their clients. *Rumpza v. Donalar Enterprises*, 1998 SD 79 ¶ 29–34, 581 N.W.2d 517, 524–25; *Ward v. Lange*, 1996 SD 113, ¶ 27, 553 N.W.2d 246, 253; *Estes v. Millea*, 464 N.W.2d 616, 619 n.4 (S.D. 1990). To me the evidence falls short of invoking laches or estoppel precluding any support going to the child by way of her mother. Instead, the hearing examiner and subsequently the circuit court took this evidence into consideration in making a partial reduction in the form of a deviation from the child support guidelines.

[¶ 50.] The final and perhaps the most difficult issue is to determine the appropriate amount of the back support. The hearing examiner and circuit court allowed a deviation in the form of a reduction from $21,343.52 to $14,000. The hearing examiner noted that Teller could have easily notified Loomis during the first three years when they were both living in Gillette, Wyoming. Further, Loomis "in the interim established a family with two children, ages seven and twelve, and his financial circumstances and associated factors demonstrate to the referee that a substantial deviation from the strict support schedule is warranted under the circumstances." Unfortunately, there is no rationale as how the $14,000 is determined. I agree with Justice Konenkamp that under SDCL 25–8–5, the child support guidelines are not mandatory as with current and future support. *See* SDCL 25–7–6.2. However, they are a helpful starting point.[13]

---

**13.** Loomis argues that a referee is limited in its authority to a deviation under the child support guidelines (SDCL 25–7–6.10) and has no equitable powers. Under SDCL 25–7A–6, "[t]he referee shall make a report to the court, recommending the amount of the debt due to the state, if any, and the monthly support obligation of the parent and the arrearage debt due to the obligee...." Under SDCL 25–7–6.10(2), a deviation from the guidelines is allowed for "[a]ny financial condition of either parent which would make application of the schedule inequitable." As such, the emotional trauma caused by the inability to establish a relationship with a previously unknown 14–year–old daughter is not a basis for a deviation. Further, SDCL 25–7–6.2 limits the guidelines, and thus any deviations therefrom, to present and future support obligations. Thus, it would appear to fall upon the circuit court, rather than the hearing examiner, to determine whether the invocation of equitable defenses such as laches and estoppel are appropriate in a given case.

[¶ 51.] We have repeatedly held that a parent's duty to support his or her children is paramount and all other financial obligations are secondary. *Vander Woude v. Vander Woude*, 501 N.W.2d 361, 363 (S.D. 1993) (citations omitted). Ordinarily, the child support obligation to the oldest daughter would take precedence over obligations resulting from remarriage. *Kost v. Kost*, 515 N.W.2d 209, 214 (S.D.1994). However, here it is conceded that Loomis married, fathered two children and supported his spouse and children totally unaware of the third child conceived with Teller. Loomis is fully agreeable to pay current and future child support for Kristie.

[¶ 52.] Loomis' modest income is a net of $1,438.74 per month. Mother's income is imputed minimum wage of $668.31 net per month. It would be in Kristie's best interests to be awarded the full $14,000. Better yet for Kristie would be to award her mother the full $21,343.52. However, Kristie should not be enriched by taking bread out of the mouths of the other two children.

> The ultimate conclusions of the majority and dissent concerning this issue strikingly illustrate the problem faced by the trial court in this case and routinely faced by the circuit courts of this state in matters of domestic relations and child support. There are simply too few dollars to meet even the most modest standard of living. Judges are not dispensers of manna from heaven. Far too often they are called upon to apportion poverty and its accompanying misery by degree based on the type of determinations that are required in support cases such as this.

*State ex rel. VKH v. SW*, 442 N.W.2d 920, 925 (S.D.1989) (Gilbertson, Circuit Judge, concurring). *See also Ochs v. Nelson*, 538 N.W.2d 527, 531 (S.D.1995). The facts of this case are a far cry from the very substantial financial resources in *Evans v. Evans*, 1997 SD 16, 559 N.W.2d 240; *Billion v. Billion*, 1996 SD 101, 553 N.W.2d 226, and *Ochs*, 538 N.W.2d 527, which focused the issue of the entitlement to child support and did not require a corresponding question of how much hardship or financial damage such contributions would inflict on the other members of the family involved.

[¶ 53.] Based on the unique circumstances of this case, I would treat the three children equally as all were alive during the appropriate six-year period. As such I would award Kristie one-third of the original arrearages of $21,343.52, that being $7,114.50. If we are to be required to apportion poverty and its accompanying misery, then at least it should be apportioned evenly. I would also allow Loomis to make reasonable installments on this obligation and if he remains current, then no levy, garnishment or other collection procedure should be authorized that might work an undue hardship on his current family.

[¶ 54.] For the above reasons, I respectfully dissent.