2001 SD 98

**Crystal E. BONDE, Plaintiff and Appellant,**

v.

**Martin BOLAND, Defendant and Appellee.**

**No. 21765.**

Supreme Court of South Dakota.

Considered on Briefs May 29, 2001.

Decided July 25, 2001.

Stan H. Anker, Rapid City, SD, Attorneys for plaintiff and appellant.

Daniel L. Pahlke, Rapid City, SD, Attorney for defendant and appellee.

MILLER, Chief Justice.

[¶ 1.] Crystal E. Bonde sought child support and child support arrearages from Martin Boland. The referee concluded Martin did owe arrearages. The circuit court rejected the referee's recommendation as to arrearages. Crystal appeals. We reverse and remand.

### FACTS

[¶ 2.] Crystal and Martin met while working together at the Holiday Inn in Rapid City, South Dakota. They dated and ultimately engaged in sexual relations, which resulted in Crystal becoming pregnant. Soon after she learned of her pregnancy, Crystal advised Martin and told him that he was the father. The couple discussed and rejected abortion as an option. Crystal alleges, and Martin disputes, that after she told him she was pregnant with his child Martin wanted to have nothing to do with her. She further claims that as her due date neared and following the birth, Martin's efforts to harass her increased, including peering through and beating on her windows, leaving things in her mail box and screaming at her from outside her home all resulting in police involvement. Additionally, she contends Martin accused her of drug abuse and caused her to lose her job.

[¶ 3.] Before the child was born, Crystal considered giving the child up for adoption. Two months before birth, Martin received adoption papers requesting termination of his parental rights. He signed the adoption papers after meeting the adoptive parents. Ultimately, the adoption failed. (Martin alleges that immediately prior to the birth Bonde told him that due to the fact she was late for delivery he might not be the father.)

[¶ 4.] Crystal gave birth on November 25, 1994 and informed Martin by telephone a few days later. He attempted to visit Crystal and the child, but he claims the police arrived and told him he must leave or be charged with trespassing. They allegedly told him that Crystal said he was not the child's father.

[¶ 5.] Martin also alleges that he attempted to establish paternity by sending a form to the state, but he learned it would not be accepted because Crystal had not listed him as the father on the birth certificate.

[¶ 6.] In December 1994, Crystal spoke telephonically with Martin's mother and inquired about his blood type. Martin's mother, who is a nurse, asked a doctor

about the possibility of Martin's paternity based on the blood types. The doctor allegedly indicated that given the blood types there would be less than a onepercent chance. Crystal admitted to the referee that the conversation could have given the impression that Martin's paternity was in question. She conceded that, due to his horrible behavior, she wished he were not the father.

[¶ 7.] Despite the controversy surrounding Martin's potential paternity, he left for work in Alaska in early 1995 without resolving the situation. He returned to South Dakota for a visit in the fall of 1998. After speaking with a friend of Crystal's, he contacted her and suggested DNA testing to determine paternity. She agreed and the test confirmed Martin was the child's father. He began paying child support. (During Martin's absence in Alaska, Crystal never sought child support from him nor did he ever attempt to contact her.)

[¶ 8.] In November 1999, Crystal brought this action seeking ongoing child support and arrearages. The referee recommended that Martin pay both current, ongoing support and arrearages from the date of the child's birth. The circuit court rejected the referee's findings of fact and conclusions of law and its recommendation as to arrears. The circuit court then substituted its own findings of fact and conclusions of law, nunc pro tunc, for the referee's, and concluded that the equitable defenses of laches and estoppel barred Crystal from recovering child support arrears. She appeals.

**STANDARD OF REVIEW**

[¶ 9.] We review findings of fact under the clearly erroneous standard, which means we will reverse only if we are definitely and firmly convinced a mistake was made. *Grauel v. South Dakota Sch.*

*of Mines & Tech.*, 2000 SD 145, ¶ 7, 619 N.W.2d 260, 262. Whether laches and equitable estoppel are available as defenses in child support cases is an issue of law. *In re Loomis,* 1998 SD 113, ¶ 7, 587 N.W.2d 427, 429. Accordingly, our review of this issue is de novo. *Id.*

**DECISION**

[¶ 10.] Crystal brought this action under SDCL 25-8-5, which states:

The mother may recover from the father a reasonable share of the necessary support of a child born out of wedlock. In the absence of a previous demand in writing served personally or by registered or certified letter addressed to the father at his last known residence, not more than six years' support furnished before bringing an action may be recovered from the father.

As we noted in *Loomis,* nothing in this statute abrogates the right of a father to assert equitable defenses. 1998 SD 113, ¶ 11, 587 N.W.2d at 429. The statute simply establishes "a maximum time span for which a father of a child born out of wedlock can be required to pay past child support." *Id.*

[¶ 11.] Martin argues that Crystal should be barred from receiving arrearages for the care of his child by both the equitable defenses of laches and estoppel. The circuit court agreed because it believed the facts and circumstances here are "almost identical" to the facts in *Loomis.* We hold that the circuit court's findings of fact are clearly erroneous.

[¶ 12.] The circuit court in rejecting the referee's findings in this case wholly disregarded the referee's ability to see and hear the testimony of the witnesses and judge the credibility of those witnesses. Contrary to the referee, the circuit court found that Crystal had misrep-

resented facts about Martin's paternity. These findings, however, directly contradict Martin's own admissions that: (1) Crystal told him she was pregnant and he was the father; (2) he signed adoption papers relinquishing his parental rights; (3) Crystal informed him of the birth within two days by leaving a message on his answering machine; and (4) he believed he was the father during Crystal's pregnancy with his child. As Martin's own admissions before the referee directly contradict the circuit court's findings of fact, we are definitely and firmly convinced a mistake was made. *Grauel,* 2000 SD 145, ¶ 7, 619 N.W.2d at 262.

[¶ 13.] The circuit court erred in its belief that these facts are identical to those in *Loomis.* In *Loomis,* the father and the mother had a brief sexual encounter, which resulted in the mother's pregnancy. The mother did not tell the father she was pregnant nor she did she tell him[1] he fathered the child after it was born, even though they both lived in the same town for three years after the child's birth. The father moved away, married and started another family. The mother waited fourteen years before seeking to inform the father about their child. We held that because the mother had purposefully concealed the child from the father for fourteen years it would be inequitable to force him to pay support arrears for the past six years.

[¶ 14.] As discussed earlier, the facts and circumstances in this case are significantly different from those in *Loomis.* First, Martin acknowledged that Bonde told him she was pregnant with his child just two months into her pregnancy. Second, Martin admitted he met the adoptive parents and signed adoption papers relinquishing his parental rights. Third, Martin testified that Crystal informed him she had given birth within two days. Fourth,

Martin stated he believed he was the father during the pregnancy. Fifth, the time frame here is significantly shorter, i.e. 5 years (which is within the statutory maximum) versus the 14 years in *Loomis.*

[¶ 15.] The key facts upon which *Loomis* turned are noticeably absent in this case. Crystal did not hide the true facts, but rather told Martin on more than one occasion that he was the father. Furthermore, he acknowledged his paternity in signing adoption papers relinquishing his parental rights. Crystal did not conceal or misrepresent the fact of Martin's paternity, nor has Martin moved on and started another family. These facts are significantly distinguishable from *Loomis.*

[¶ 16.] **1. Laches**

[¶ 17.] To establish a successful defense under the doctrine of laches, Martin must show, "(1) she had full knowledge of the facts upon which the action is based, (2) regardless of this knowledge, she engaged in an unreasonable delay before commencing the suit, *and* (3) that allowing her to maintain the action would prejudice other parties." *Conway v. Conway,* 487 N.W.2d 21, 24 (S.D.1992) (citations omitted).

[¶ 18.] Crystal had the child, knew Martin was the child's father and knew he had an obligation to support the child. She does not offer any argument on this element. Furthermore, she had two other children for whom she was receiving child support. Clearly, the first element is satisfied.

[¶ 19.] Martin claims Crystal's five-year delay in seeking child support arrears is unreasonable. Although he relies upon *Loomis* in support of this proposition, as we previously noted, the facts therein are significantly different.

[¶ 20.] The last factor requires us to examine whether allowing Crystal to maintain this action will prejudice other parties. *Loomis,* 1998 SD 113, ¶ 13, 587 N.W.2d at 429. Martin argues that he missed the first three years and nine months of his child's life due to Crystal's misrepresentations. He claims he proceeded with his life not knowing he had a child to support, but, once he knew he might be the father, he immediately agreed to DNA testing for paternity and began paying child support when the testing confirmed his paternity.

[¶ 21.] Martin contends his actions are similar to the father in *Loomis.* However, as noted above there are many key factual distinctions. His assertions simply are not supported by the facts.

[¶ 22.] Accordingly, Crystal is not barred from recovery by laches because Martin has failed to establish two of the three factors required.

[¶ 23.] **2. Equitable estoppel.**

[¶ 24.] The equitable defense of estoppel finds its basis in " 'fair dealing, good faith and justice.' " *Loomis,* 1998 SD 113, ¶ 17, 587 N.W.2d at 430 (citation omitted). Martin must show that:

(1) Crystal made a false representation or a concealment of material facts;

(2) he was without knowledge of the real facts;

(3) Crystal made the representation or concealment with the intent that it be acted on; and

(4) he relied on the misrepresentation or concealment creating prejudice or injury.

*Id.* (citation omitted). Martin must show each of these elements by clear and convincing evidence. *Id.* (citation omitted). We hold that he has not met that burden.

[¶ 25.] Because the circuit court erred in denying an award of arrearages, we reverse and remand to the circuit court for further proceedings consistent with this opinion.

[¶ 26.] SABERS, AMUNDSON, and GILBERTSON, Justices, concur.

[¶ 27.] KONENKAMP, Justice, concurs in result.

KONENKAMP, Justice (concurring in result).

[¶ 28.] Child support is a fundamental human right. Equitable defenses, such as laches and estoppel, which turn on the actions or inactions of parents, fail to consider the child's rights. South Dakota's statutory scheme creates a child-centered paradigm for resolving disputes between parents: where the protection and support of children are concerned, the faults and failings of the parents do not control. Under no circumstances can a child be held accountable for laches or estoppel. For these reasons, and for the additional reasons set out in my dissent in *In Re Loomis,* 1998 SD 113, 587 N.W.2d 427 (SD 1998), I concur in the result of this case.